J-A28023-20

2021 PA Super 52

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEITH ANTHONY ROSARIO | : | |
| | : | |
| Appellant | : | No. 1700 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 18, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0002611-2017

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

OPINION BY MURRAY, J.: **FILED: March 23, 2021**

Keith Anthony Rosario (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count of attempted homicide, two counts of aggravated assault, two counts of kidnapping, and one count of conspiracy to commit criminal homicide, aggravated assault, and kidnapping.[1]

FACTUAL AND PROCEDURAL HISTORY

In the first ten pages of its Pa.R.A.P. 1925(a) opinion, the trial court recounted the procedural history of this case, accurately observing that it "is quite lengthy and complex." Trial Court Opinion, 2/24/20, at 2 n.2. The trial

_____

[1] 18 Pa.C.S.A. §§ 901, 2501, 2702, 2901, and 903.

court also detailed the evidence presented at Appellant's four-day jury trial.[2]

*See id.* at 10-24. The evidence at trial expanded on the factual recitation in the affidavit of probable cause, which states:

> On 09/05/17 at approximately 2233 hours, PSP was dispatched to the listed location for a report of a gunshot and a male screaming for help. Upon the arrival of PSP units contact was made with Marcus STANCIK. STANCIK related that he had been shot in the head by a male known to him by the nickname of "Sin." Tpr. WEBB who was familiar with "Sin" asked do you mean ROSARIO to which STANCIK replied, yes, Keith ROSARIO. STANCIK was treated at the scene for an injury to his neck and was subsequently transported to Allegheny General Hospital (AGH). At AGH STANCIK was diagnosed with a gunshot wound to the neck at the base of the skull and a bullet was found to be present in his neck upon xray.
>
> [The Affiant] interviewed STANCIK at AGH and STANCIK related he had known "Sin" for about a week. "Sin" lived on Ewing Street near Grove Street. STANCIK stayed at "Sin's" for several nights. "Sin" was described as a 27 year old Puerto Rican from New York. STANCIK was walking along Rt 40 when he was approached by a vehicle in which a male exited and requested STANCIK get in. STANCIK refused and the vehicle left. About 15 minutes later STANCIK was walking in an alley off of Rt 40 when "Sin" and two other individuals stopped a vehicle near him. Sin and another male exited the vehicle, STANCIK was assaulted and then thrown in the vehicle. STANCIK was placed in the back of the vehicle between Sin and another male. Then they drove STANCIK to another location and "Sin" removed STANCIK from the vehicle and shot him in the back of the head.

Affidavit of Probable Cause, 9/6/17.

---

[2] The court noted it addressed Appellant's omnibus pretrial motion (which included Appellant's motions for discovery, severance of trials, severance of offenses, suppression, dismissal as "multiplicitous and duplicitous," writ of Habeas Corpus, change of venue and modification of bail) by separate Opinion and Order issued September 11, 2018. Trial Court Opinion, 2/24/20, at 4.

In a criminal complaint filed on September 6, 2017, the Commonwealth charged Appellant with attempted murder, alleging, "[Appellant] did intentionally attempt to cause the death of another human being by . . . shooting Marcus Stancik in the neck . . ." Criminal Complaint, 9/6/17, at 2. It also charged him with two counts of aggravated assault, stating Appellant "did attempt to cause or did intentionally, knowingly or recklessly cause serious bodily injury to Marcus Stancik under circumstances manifesting an extreme indifference to the value of human life . . . by shooting him with a firearm . . ." and "[Appellant] did attempt to cause or did intentionally or knowingly cause bodily injury to Marcus Stancik with a deadly weapon . . . [Appellant] did use a firearm to shoot Stancik in the neck . . ." *Id.* at 2, 4. The Commonwealth also charged Appellant with conspiracy to commit aggravated assault based on Appellant shooting Stancik in the neck with a firearm. *Id.* at 3.

The Commonwealth filed a criminal information on November 9, 2017. It stated in pertinent part:

> **COUNT 1: Criminal Attempt - Homicide**
> 18 Pa.C.S. § 901(a) - 18 Pa.C.S. § 2501(a) - Felony 1st DEGREE The Actor, with the intent to commit the crime of criminal homicide, in violation of Section 2501 of the Pennsylvania Crimes Code, did an act or acts that constituted a substantial step toward the commission of that crime, that is, the Actor,, acting alone and/or with others, did intentionally shoot MARCUS STANCIK in the neck, and/or head with a firearm, in violation of Section 901(a) of the Pennsylvania Crimes Code, Act of December 6,1972:, 18 Pa.C.S, § 901(a), as amended.

**COUNT 2: Aggravated Assault**
    18 Pa.C.S. § 2702(a)(1) - Felony 1st DEGREE
The Actor did attempt to cause serious bodily injury to another, or caused such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life, that is, the Actor, acting alone and/or with others, did shoot MARCUS STANCIK in the neck and/or head with a firearm intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life, in violation of Section 2702(a)(1) of the Pennsylvania: Crime Code, Act of December 6, 1972, 18 Pa. C.S. § 2702(a)(1), as amended.

**COUNT 3: Aggravated Assault**
    18 Pa.C.S. § 2702(a)(4) - Felony 2nd DEGREE
The Actor attempted to cause or intentionally, knowingly or recklessly caused bodily injury to another with a deadly weapon, that is, the Actor, acting alone and/or with others, did shoot MARCUS STANCIK in the neck and/or head with a firearm, in violation of Section 2702(a)(4) of the Pennsylvania Crimes Code, Act of December 6,1972,18 Pa.C.S. § 2702(a)(4), as amended.

* * *

**COUNT 6: Criminal Conspiracy**
    18 Pa.C.S, § 903(a)(1) - Felony 1st DEGREE
The Actor, With the intent of promoting or facilitating the crimes of criminal homicide and/or aggravated assault and/or kidnapping, in violation of Sections 2501 and/or 2702 and/or 2901 of the Pennsylvania Crimes Code, agreed with another person or persons, namely, RICHARD LACKS, that they or one or more of them would engage in conduct which constitutes the crime of criminal homicide and/or aggravated assault and/or kidnapping, and the Actor committed an overt act or acts in furtherance thereof, in violation of Section 903 of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 903, as amended.

Criminal Information, 11/9/17, at unnumbered pages 1-2.

A jury trial commenced on February 4, 2019. The jury convicted Appellant on February 7, 2019. The verdict sheet read with respect to the charge of criminal conspiracy, which was count 6:

- 4 -

If you find the defendant guilty at Count 6 [which the jury did] please indicate whether the following crimes were proven beyond a reasonable doubt as the objective of the conspiracy:

a) Criminal Homicide       Agree      Disagree

b) Aggravated Assault      Agree      Disagree

c) Kidnapping            Agree      Disagree

Verdict, 2/7/19. The jury circled agree on all three crimes. *Id.*

On June 3, 2019, the trial court sentenced Appellant to an aggregate 35½ to 90 years of incarceration. Appellant filed post-sentence motions which were denied by operation of law on October 17, 2019. Appellant filed this timely appeal; both he and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Notably, the trial court entered an order correcting Appellant's sentence on February 18, 2020, "to reflect that, at Count 6, [Appellant] **was sentenced on the Charge of Conspiracy to Commit Aggravated Assault**. All other terms and conditions of the Judgment of Sentence shall remain in effect." Order, 2/18/20 (bold in original). Citing both the record and legal authority, the court stated:

because the typographical error made by the court reporter is patent and obvious, this Court retains the power to correct it although the 30-day period has expired.

Order, 2/18/20.

The record, particularly the transcript from the sentencing hearing, confirms the court only sentenced Appellant for conspiracy to commit

aggravated assault, rather than conspiracy to commit homicide, aggravated assault, and kidnapping. *See*, *e.g.*, N.T., 6/3/19, at 27. We have explained:

> "Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken." *Commonwealth v. Quinlan*, 639 A.2d 1235, 1238 (Pa. Super. 1994), *appeal dismissed as improvidently granted*, 675 A.2d 711 (1996). *See also* 42 Pa.C.S.A. § 5505 (stating except as otherwise provided or prescribed by law, court upon notice to parties may modify or rescind any order within 30 days after its entry, notwithstanding prior termination of any term of court, if no appeal from such order has been taken or allowed). Nevertheless, once the thirty-day period expires, the trial court usually loses the power to alter its orders. An exception to this general rule exists to correct "clear clerical errors." . . .
>
> "[A]n alleged error must qualify as a clear clerical error (or a patent and obvious mistake) in order to be amenable to correction." *Commonwealth v. Borrin*, 12 A.3d 466, 473 (Pa. Super. 2011) (*en banc*), *aff'd*, 80 A.3d 1219 (Pa. 2013).
>
>> This Court's case law has addressed the situations where ... the terms of a defendant's sentence as stated at the sentencing hearing conflict (or are deemed incompatible) with the terms of the defendant's sentence as stated in the sentencing order.
>>
>> In these circumstances, for a trial court to exercise its inherent authority and enter an order correcting a defendant's written sentence to conform with the terms of the sentencing hearing, the trial court's intention to impose a certain sentence must be obvious on the face of the sentencing transcript. ... Stated differently, only when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing can there be a "clear clerical error" on the face of the record, and the [signed] sentencing order subject to later correction.

*Commonwealth v. Kremer*, 206 A.3d 543, 547–48 (Pa. Super. 2019) (some case citations modified or omitted).

Here, the record reflects the clerical error involving the wording of the court's sentence at Count 6, which had no impact on the mathematical calculation of Appellant's 35½ – 90 year sentence. The trial court explained that "due to the court stenographer's error, the [June 3, 2019] sentencing order states that Appellant was sentenced on criminal conspiracy to commit homicide, aggravated assault, and kidnapping. However, Appellant was only sentenced on criminal conspiracy to commit aggravated assault." Trial Court Opinion, 2/24/20, at 9 n.8; *see also id.* at 41-42 (citing transcript from sentencing hearing and stating "court stenographer's error undoubtedly qualifies as a clear clerical error."). We therefore proceed to address the issues Appellant raises on appeal.[3]

## ISSUES

I. Did the trial court err in denying [Appellant]'s motion to suppress the .40 caliber handgun found in [Appellant]'s home by concluding Tyree King, a teenager, had apparent authority to consent to a police search of [Appellant]'s home when police believed [Appellant] inside?

II. Did the jury convict on the charge of criminal conspiracy based upon insufficient evidence?

III. Did the trial court abuse its discretion in imposing a sentence that was manifestly excessive and/or unduly harsh making it unreasonable under 42 Pa.C.S. §9781(c)(2) because 1) it was disproportionate to [Appellant]'s crimes of conviction and without consideration of him as an individual and his character references after consideration of the factors in 42 Pa.C.S. § 9721(b); 2) it implied [Appellant] cannot be rehabilitated; and 3) it subjected

_____

[3] For ease of disposition, we have reordered the issues in Appellant's brief.

[Appellant] to imprisonment and/or parole supervision for the remainder of his natural life?

IV. Do [Appellant]'s individual sentences and aggregate sentence of 35½ years to 90 years imprisonment violate the prohibition against cruel and unusual punishments under both the federal and Pennsylvania Constitutions?

V. Did the trial court err by sentencing [Appellant] on charges of criminal attempt-homicide and criminal conspiracy in violation of 18 Pa.C.S. § 906?

VI. Did the trial court err in imposing two separate sentences for same-episode conduct constituting a "kidnapping" under 18 Pa.C.S. § 2901(a)(2) and (a)(3)?

Appellant's Brief at 10-11.

## Suppression

In his first issue, Appellant argues suppression was improper because Tyree King, who consented to the search of Appellant's residence, lacked authority to do so. Appellant emphasizes King's youth, being "sixteen or seventeen," and claims "the record does not establish King had apparent authority or that the police could reasonably believe King had such authority." Appellant's Brief at 51, 53.

At the outset, we recognize our review,

is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression

- 8 -

rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citations omitted). Additionally, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

At Appellant's pretrial hearing, the court observed "there are nine parts to his omnibus." N.T., 5/4/18, at 5. However, the only pretrial issue before us on appeal is Appellant's claim that the court erred in denying his request to suppress a handgun recovered from his residence.

Appellant did not testify or present any witnesses at the pretrial hearing. The only testimony relevant to his suppression claim came from Pennsylvania State Troopers Fred Scott and Mateo Herrera. Trooper Scott stated that he was dispatched to Appellant's residence while he and his partner "were on a call at that time, out at a scene," which was "a serious incident," and "based on the circumstances, we related to the City of Washington they should be on the lookout for an individual whose name we had gotten at that time was [Appellant]." *Id.* at 40-41. When Trooper Scott arrived, "three individuals were outside the residence at that time directly in front of the residence . . . on the front stoop or sidewalk." *Id.* at 42. Other police were already on the scene and "indicated these three people were the only people inside, to their

knowledge, inside the residence." *Id.* Two of the individuals were "younger white females" and the third was Tyree King, "a younger black male [who] indicated he was house-sitting for [Appellant] and that he was watching his dog as well. He gave the impression [Appellant] was out of town." *Id.* at 43.

Trooper Scott testified he "asked Mr. King for consent to look for [Appellant] within the residence [because] we had some concerns about his danger level and wanted to make sure he wasn't currently inside the house." *Id.* at 44. Trooper Scott told Tyree King "we just wanted to look for" Appellant; although Trooper Scott had no reason not to believe Tyree King was house-sitting for Appellant, and "felt [King's] indication was accurate," he also stated he "did not believe [Appellant] was out of town." *Id.* at 45-46. This testimony does not support Appellant's claim that Trooper Scott "believed King a liar and [Appellant] to be present inside, [such that] apparent authority as a housesitter/dog-sitter could not reside with King and thus law enforcement could not rely on King's consent to search [the residence]." Appellant's Brief at 54-55.

In addition, Trooper Scott's partner, Trooper Herrera, testified to being dispatched to Appellant's residence because the officers were looking for Appellant "due to a serious criminal incident that happened on Cove Road." *Id.* at 56. Trooper Herrera corroborated Trooper Scott's testimony that three individuals were standing outside the residence; the male, Tyree King,

indicated he was house-sitting while Appellant was out of town, and Tyree King consented to a search of the residence.  *Id.* at 56-57.

On this record, Appellant argues:

[Trooper] Scott is clear that he did not believe King in this regard and that he believed [Appellant] [was] inside his residence at 449 Ewing. Yet, no one obtained a search warrant for the residence. The suppression court used circular logic to validate the search of [the residence] that uncovered the handgun by finding apparent authority to consent.

Appellant's Brief at 53.  He continues:

[Trooper] Scott's disbelief of King's statement that [Appellant] was not inside is fatal to a conclusion that apparent authority existed in King because only [Appellant's] absence from [the residence] would give King authority to consent.  As Scott believed King a liar and [Appellant] to be present inside, apparent authority as a housesitter/dog-sitter could not reside with King and thus law enforcement could not rely on King's consent to search.

*Id.* at 54-55.

The record does not support Appellant's claim that Trooper Scott "was clear that he did not believe King," "believed Appellant was inside his residence," and "believed King a liar."  Officer Scott specifically stated he "had no reason not to believe King," but "did not believe [Appellant] was out of town," and "wanted to make sure [Appellant] wasn't currently in the house." In addition, both Officer Scott and Officer Herrera testified they were looking for Appellant because he was suspected of being involved in a serious criminal incident and may be dangerous.

The suppression court rejected Appellant's argument, citing the Supreme Court's decision in *Commonwealth v. Strader*, 931 A.2d 630,634

(Pa. 2007), and finding Tyree King had apparent authority to consent to the search. The court correctly explained that "police must make a determination on whether the facts available to them at the moment would lead a reasonable person of reasonable caution to believe that the consenting party had authority over the premises." Suppression Court Opinion, 9/11/18, at 4 (citing *Strader*, *supra*).

> The Pennsylvania Supreme Court explained:
>
> The Fourth Amendment protects the people from unreasonable searches and seizures. A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. One such exception is a consensual search, which a third party can provide to police, known as the apparent authority exception.
>
> A third party with apparent authority over the area to be searched may provide police with consent to search. Third party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

*Strader*, 931 A.2d at 634.

Consent in *Strader* was given by an individual named Thornton. The Court stated:

> [Police] knocked on the apartment door. A man who identified himself as Thornton answered the door. Detective Knox showed Thornton a wanted poster of Shields and asked Thornton whether he knew him; Thornton responded he did not. Detective Knox

- 12 -

asked Thornton whether appellant was in the apartment, and Thornton said "no, he would be back shortly." **Thornton stated he was there temporarily**, and he and another man in the apartment had been there for about a day. Detective Knox asked Thornton whether he was in charge of the apartment. Thornton responded, "yes." Detective Knox asked Thornton for permission to search the apartment for Shields; Thornton consented.

*Id.* at 632 (citations omitted, bold emphasis added). The Court continued,

Here, police did not immediately ask Thornton if they could enter; instead, they spoke with him and determined appellant was not present. Before police sought permission to enter the apartment, they asked Thornton whether he had authority to control who entered the apartment. Once Thornton indicated he was in control, police asked him, as an occupant who expressly claimed authority to control the apartment, whether they could enter. The fact police knew appellant was likely to return soon is significantly less important here; police were searching for Shields as a fugitive, making time of the essence so that police could capture Shields and protect the public.

*Id.* at 635.

Although the appellant in **Strader** was not the fugitive sought by police in their search, the case is similar because Thornton, who gave consent, was "there temporarily," like Tyree King, and likewise, time was of the essence because Appellant, although not a fugitive, was sought by police because he was suspected of involvement in a "dangerous incident," and thought to "pose a danger." N.T., 5/4/18, at 41. Confirming Trooper Scott's testimony, Trooper Herrera stated police "were looking for [Appellant] at this time due to a serious criminal incident that happened." *Id.* at 56.

The suppression court found that "given the totality of the circumstances, King's age by itself does not invalidate his consent for the

search." Suppression Court Opinion, 9/11/18, at 6. The court noted that King's age was the "only distinction," and "given the substantial similarities in **Strader** to the present case . . . the police acted reasonably in their belief that King controlled access to the premise and had apparent authority to consent to search." **Id.** at 7. We agree. Appellant's suppression issue does not merit relief.

<u>Sufficiency as to Conspiracy</u>

Appellant next claims there was insufficient evidence to support his criminal conspiracy conviction. Appellant asserts "[t]he facts do not establish beyond a reasonable doubt that [Appellant] entered into a conspiracy with Lacks and King to commit kidnapping, aggravated assault and homicide against Stancik."[4] Appellant's Brief at 66. Appellant filed his brief on July 6, 2020, nearly four months after the court corrected its sentence to indicate that it only sentenced Appellant for conspiracy to commit aggravated assault. Appellant disregards the correction in his sufficiency argument,[5] and focuses on the statutory elements of conspiracy. **See** Appellant's Brief at 64-71.

_____

[4] We note, as cited above, the criminal information only charged Appellant with entering into a conspiracy with Lacks, not King. Criminal Information, 11/9/17, at unnumbered page 1.

[5] Appellant acknowledges the correction in his sentencing argument, where he vaguely states: "The trial court's sentence of [Appellant] for Conspiracy to Commit Aggravated Assault also creates a distinction without a difference among the objects of the conspiracy that raises an academic sentencing guidelines argument unnecessary to resolve here." Appellant's Brief at 40-41.

- 14 -

We begin with our standard of review:

A claim challenging the sufficiency of the evidence presents a question of law. **Commonwealth v. Widmer**, 560 Pa. 308, 744 A.2d 745, 751 (Pa. Super. 2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." **Commonwealth v. Hughes**, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." **Id.**
Our Supreme Court has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Ratsamy**, 594 Pa. 176, 934 A.2d 1233, 1236 n.2 (2007).

**Commonwealth v. Thomas**, 65 A.3d 939, 943 (Pa. Super. 2013).

With respect to criminal conspiracy, the trier of fact must find: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.

18 Pa.C.S.A. § 903. The essence of a criminal conspiracy is the agreement between co-conspirators.

> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Golphin*, 161 A.3d 1009, 1018–19 (Pa. Super. 2017) (citations omitted).

The crux of Appellant's argument is that there was insufficient evidence to support his conspiracy conviction because there was no evidence of an explicit agreement or criminal intent. He claims "the evidence reveals [Appellant's] actions were his own," and his actions "can best be described as spontaneous." Appellant's Brief at 70-71. Appellant asserts that "[n]othing suggests [Appellant's] actions were planned, or an agreement to do harm to Stancik existed between [Appellant] and anyone else. The actions of Lacks [] do not evidence an agreement, but a lack of knowledge where [Appellant's] intent lied." *Id.* at 70. The record does not support this argument.

As noted and adopted above, the trial court devoted nearly 14 pages to its recitation of the evidence presented to the jury at trial. *See* Trial Court Opinion, 2/24/20, at 10-24. With regard to Appellant's conspiracy conviction, the court explained:

Appellant and Richard Lacks clearly engaged in a criminal conspiracy to commit homicide, aggravated assault, and kidnapping. The evidence demonstrates that, upon initially sighting Mr. Stancik, Mr. Lacks phoned Appellant and informed him he had just seen Mr. Stancik. Appellant then met Mr. Lacks and Mr. King and the parties began to search for Mr. Stancik in the silver Honda Pilot, with Appellant driving the vehicle. When they found Mr. Stancik, Mr. Lacks actively participated in the kidnapping of Mr. Stancik when he aided Appellant in assaulting him and forcing him into the vehicle.

Mr. Lacks also aided Appellant during the commission of the crime in several other ways. First, upon Appellant's request, he drove to the residence at 449 Ewing Street so that Appellant could obtain the .22 caliber handgun, and personally retrieved the handgun from the residence and gave it to Appellant. Appellant held this handgun against Mr. Stancik while in the vehicle and then later used it to shoot him. Furthermore, he complied with Appellant's request to drive towards any nearby body of water. Additionally, Mr. Lacks was able to hear Appellant's verbal threats of violence against Mr. Stancik in the vehicle: "'Shut the fuck up. You're getting what you deserve, you piece of shit[,]'" and "'Shut the fuck up. I'll leave you on the side of the road.'" (Trial Tr. Vol. 1, 120:4-6; Trial Tr. Vol. 2, 17:9-11.) According to Mr. Stancik, Mr. Lacks was in possession of a .40 caliber handgun while in the vehicle. Finally, Mr. Lacks was present at the body of water near 400 Cove Road where Appellant shot Mr. Stancik and testified that he heard a gunshot after Appellant forced Mr. Stancik into the woods.

The foregoing facts indicate that Appellant and Mr. Lacks were engaged in a conspiratorial agreement to kidnap, assault, and murder Mr. Stancik. . . . Appellant and Mr. Lacks were associated with one another; furthermore, they each had knowledge of the crime, were present at the scene of the crime, and participated in the object of the conspiracy. This [c]ourt

ultimately finds that the jury properly inferred a criminal conspiracy to commit homicide, aggravated assault, and kidnapping between Appellant and Mr. Lacks, and thus, the Commonwealth has sustained its burden with regard to this offense.

*Id.* at 55-56 (citing ***Commonwealth v. Mitchell***, 135 A.3d 1097, 1102-03 (Pa. Super. 2016)).

We agree with the trial court, and therefore find no merit to Appellant's sufficiency argument.

<u>SENTENCING</u>

In his third issue, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Id.*** We conduct this four-part test to determine whether:

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process."

*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of the test by raising his discretionary sentencing claim in a timely post-sentence motion, filing a timely notice of appeal, and including a Rule 2119(f) concise statement in his brief. *See* Appellant's Brief at 23-26. Therefore, we examine whether Appellant presents a substantial question.

Appellant contends: (1) the sentence "is disproportionate to the crime of conviction and without consideration of [Appellant] as an individual;" (2) "the sentencing court implied . . . he is without the possibility of rehabilitation;" and (3) the imposition of consecutive sentences resulted in an "excessive aggregate sentence." Appellant's Brief at 24-25. Each of these claims raises a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 338-39 (Pa. Super. 2015) (claim that imposition of consecutive sentences resulted in excessive aggregate sentence may raise substantial question); *Baker*, 72 A.3d at 662 (claim that failure to account for rehabilitative needs resulted in excessive sentence raises substantial question).

We review Appellant's claim mindful of the following:

Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an

- 19 -

abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations omitted).

Instantly, the trial court explained:

. . . Contrary to Appellant's assertion, this [c]ourt did consider Appellant's individual characteristics and the character references submitted on his behalf. Prior to sentencing, the [c]ourt thoroughly reviewed the presentence investigation report prepared by John Pankopf. (Sent. Hr'g Tr. 25:17-19.) In addition, the [c]ourt considered the character references submitted by Kattiria Rosario Gonzalez, Venus Sepulveda, Samantha Nelson, Ava Rivera, Alexi Mendez, Angel Mendez, and Ada Mendez. (Sent. Hr'g Tr. 25:25-26:4.) The [c]ourt also heard testimony from Ava Rivera, Appellant's mother, and Kattiria Rosario Gonzalez, Appellant's sister, at the sentencing hearing. (Sent. Hr'g Tr. 10:7-12:14.) Finally, contrary to Appellant's argument, this [c]ourt did not suggest that Appellant could not be rehabilitated but merely stated that the "prior attempts to rehabilitate [Appellant] have failed." (Sent. Hr'g Tr. 29:17-18.) The [c]ourt emphasized that Appellant "had been paroled less than four months prior to this incident and was under the supervision of the Board of Probation and Parole," and was also "subject to consecutive probationary sentences on two prior drug offenses," when the incident occurred. (Sent. Hr'g Tr. 29:8-12.) Further, the offense for which Appellant was on parole was a "firearms offense," and yet, Appellant used a firearm in the instant matter. (Sent. Hr'g Tr. 29:18-21.) In imposing sentence, this [c]ourt had a duty to address the rehabilitative needs of Appellant, and therefore, this consideration was entirely proper.

The [c]ourt's reasoning for the aggravated sentence, which has previously been stated in its entirety, was set forth clearly and thoroughly and with regard for the factors under Section 9721(b).

> Under the particular circumstances of this case, an aggravated sentence was in no way unreasonable, manifestly excessive, or unduly harsh. Appellant's prior failed attempts at rehabilitation, his involving a minor in this violent crime, his lack of remorse, and the sheer brutality of the crime itself indicated to this [c]ourt that an aggravated sentence was appropriate. Ultimately, this [c]ourt finds that its sentence was entirely reasonable under the circumstances, that it complied with Section 9721(b) in all respects, and that it also considered any mitigating factors in fashioning the sentence.

Trial Court Opinion, 2/24/20, at 32-33.

There is no merit to Appellant's contention that the trial court imposed a "manifestly excessive" sentence "disproportionate to the crimes of conviction and without consideration of [Appellant] as an indvidual, his character references or factors in 42 Pa.C.S. § 9721(b)," or that it "implied . . . he is without the possibility of rehabilitation." Appellant's Brief at 24-25. The trial court had the benefit of a PSI. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988). Moreover, it expressly acknowledged Appellant's character references and testimony on Appellant's behalf.

We also agree the imposition of consecutive sentences did not result in an "excessive aggregate sentence." Appellant, while on supervised release, kidnapped Stancik, beat him both with his fists and with the gun, threatened him, and forced him to a remote area. He dragged him from the car, shot him execution-style in the back of his head, and when the first shot was not

fatal, attempted a second shot, failing only because the gun jammed. We find the aggregate sentence of 35½ to 90 years is not grossly disparate to Appellant's conduct and does not "viscerally appear as patently 'unreasonable.'" *Commonwealth v*. *Gonzalez–Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010).

Next, Appellant maintains his "individual sentences and aggregate sentence of 35½ years to 90 years' imprisonment violate the prohibition against cruel and unusual punishments under both the Federal and Pennsylvania Constitutions."[6] Appellant's Brief at 57. We disagree.

> [T]he guarantee against cruel punishment contained in the Pennsylvania Constitution, Article 1, Section 13, provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution. The Eighth Amendment does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are grossly disproportionate to the crime.
>
> In *Commonwealth v. Spells*, [ ] 612 A.2d 458, 462, 417 Pa. Super. 233 (1992) (*en banc*), this Court applied the three-prong test for Eighth Amendment proportionality review set forth by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637[ ] (1983):
>
>> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii)

---

[6] An individual's right to be free from cruel and unusual punishment is a nonwaivable challenge to the legality of the sentence. *Commonwealth v. Seskey*, 86 A.3d 237, 241 (Pa. Super. 2014).

> the sentences imposed for commission of the same crime in other jurisdictions.

> *Spells*, 612 A.2d at 462 (quoting *Solem*, 463 U.S. at 292[ ] ). However, this Court is not obligated to reach the second and third prongs of the *Spells* test unless a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.

*Commonwealth v. Lankford*, 164 A.3d 1250, 1252-53 (Pa. Super. 2017) (some citations and quotation marks omitted).

Here, the trial court properly found that Appellant failed to satisfy the first prong of the *Spells* test. Trial Court Opinion, 2/24/20, at 25-27. Given the seriousness of Appellant's offenses, Appellant's sentence is not grossly disproportionate to the crime, and does not violate prohibitions against cruel and unusual punishment. Further, because Appellant has not satisfied the first prong of *Spells*, we need not address the second and third prongs.

Finally, in his two remaining issues, Appellant challenges the legality of his sentence. He first argues that his sentence on criminal attempt — homicide and criminal conspiracy — violates 18 Pa.C.S.A. § 906. Appellant's Brief at 35-42. He also maintains his "two separate sentences for kidnapping for the same-episode conduct are illegal sentences." *Id.* at 42-49.

We have stated:

> The issue of whether a sentence is illegal is a question of law; therefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary. Additionally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law.

*Commonwealth v. Williams*, 871 A.2d 254, 262 (Pa. Super. 2005) (citations and quotation marks omitted). Further, challenges to the legality of sentence cannot be waived and may be raised for the first time on appeal. *Commonwealth v. Dickson*, 918 A.2d 95, 99 (Pa. 2007) ("challenges to sentences based upon their legality" are not subject to waiver).

Appellant first claims his sentence for conspiracy is illegal, asserting, "[18 Pa.C.S.A.] Section 906 prohibits sentencing on both of these findings of guilt." Appellant's Brief at 37 (citations omitted). Section 906 states, "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct **designed to commit or to culminate in the commission of the same crime**." 18 Pa.C.S.A. § 906 (emphasis added). Upon review, we find the recent Pennsylvania Supreme Court decision in *Commonwealth v. King*, 234 A.3d 549 (Pa. 2020) to be dispositive.[7]

In *King*, the defendant was the passenger in a car driven by a co-conspirator when he fired at least nine bullets at the victim; she survived but suffered serious injuries. *King*, 234 A.3d at 553. In pertinent part, the criminal information charged the defendant with attempted murder,

---

[7] The Supreme Court decided *King* on July 21, 2020, approximately two weeks after Appellant filed his brief.

aggravated assault, and a single count of conspiracy. *Id.* Relevant to our analysis, the trial court sentenced the defendant to consecutive terms of 20 to 40 years for attempted murder, and 10 to 20 years for conspiracy to commit aggravated assault.[8] This Court affirmed the judgment of sentence. On appeal to the Supreme Court, the defendant argued that the imposition of consecutive sentences for the inchoate crimes of attempted murder and conspiracy to commit aggravated assault violated Section 906. *Id.* at 566. The Supreme Court summarized the defendant/appellant's argument as follows:

> despite being charged and convicted of both conspiracy to commit murder and conspiracy to commit aggravated assault, there was only one conspiracy under Section 903(c), as both crimes were "the object of the same agreement or continuous conspiratorial agreement." King's Brief at 27 (quoting 18 Pa.C.S. § 903(c)). Accordingly, he argues the Superior Court erred in "finding there were two separate conspiracies where there was only one agreement." *Id.* at 28. King maintains that the Superior Court incorrectly relied on [*Commonwealth v.*] *Kelly*[, 78 A.3d 1136 (Pa. Super. 2013),] for the proposition that an offender may be sentenced on both attempted murder and conspiracy to commit aggravated assault because the two offenses are not necessarily designed to culminate in the commission of the same crime. *Id.* King argues that this rationale "confuses § 906, which is concerned with the underlying crimes, with § 903(c), which is concerned with the number of separate agreements." *Id.*

*Id.* at 566-67.

---

[8] Like this case, the initial sentencing order was incorrect; it indicated the conspiracy sentence was for conspiracy to commit murder. The trial court subsequently corrected the error to reflect that defendant was sentenced for conspiracy to commit aggravated assault. *King*, 234 A.3d at 553.

The Supreme Court agreed. It noted the criminal information only charged a single count of conspiracy, and while the verdict sheet listed two conspiracy charges — conspiracy to commit murder and conspiracy to commit aggravated assault — it listed them under one count, Count 2, on the criminal information. *Id.* at 568. The Court found there was a single conspiracy, *i.e.*, to kill the victim. *Id.* at 569. It opined:

> The Commonwealth's legal argument assumes that there existed a separate conspiracy to commit aggravated assault that was not subsumed within the conspiracy to kill. But a person cannot conspire to kill a targeted individual and not concurrently conspire to commit aggravated assault against the same individual. This Court has held that "[t]he act necessary to establish the offense of attempted murder – a substantial step towards an intentional killing – includes, indeed, coincides with, the same act which was necessary to establish the offense of aggravated assault, namely, the infliction of serious bodily injury." ***Commonwealth v. Anderson***, 538 Pa. 574, 650 A.2d 20, 24 (1994). As such, the single object of both the attempt and conspiracy convictions was [the victim's] murder, and thus, pursuant to Section 906, King could be convicted (*i.e.*, sentenced) for only one of these inchoate crimes.

> \* \* \*

> The plain language of the specific statute governing this scenario precludes multiple sentences because there is no possibility that the conspiracy to commit aggravated assault existed independently of any conspiracy to kill, nor does the Commonwealth allege any kind of temporal separation or other circumstances to suggest that two conspiratorial agreements could have existed.

> By enacting Section 906, the General Assembly declared that where a defendant tries to achieve a result – in this case, murder – but fails to do so, he may only be punished once in the absence of distinct criminal objectives. We thus find that King is entitled to relief.

*Id.* at 569-70, 572 (footnotes omitted).

Instantly, the Commonwealth acknowledges *King*. Commonwealth Brief at 18. However, the Commonwealth attempts to distinguish *King* by arguing "there are distinct criminal objectives." *Id.* at 19. The Commonwealth asserts there was an agreement between Appellant,

> Lacks, and King, that one more of them would kidnap and assault Marcus Stancik, the latter two offenses being committed in the alleyway and with a firearm in the backseat of the Honda Pilot. It is only after those offenses were committed, and thus the conspiracy then existing ended, that [Appellant] directed Lacks and King to find a body of water. For his part, if the conspiracy had not ended before, King ended the conspiracy at that point, handing the phone to Lacks and stating, "I don't want no parts of it."
>
> Once at the chosen body of water, Dam#4 in South Franklin Township, only [Appellant] got out of the vehicle with Stancik, whose head was still covered. Only [Appellant] had retrieved the firearm at that point. Only [Appellant] walked Stancik to the water's edge and shot him in the back of the head. In fact, it is only because of [Appellant's] ineffectiveness or the firearm's malfunction, combined with good luck, that Stancik survived. Once at the dam, [Appellant's] criminal objective changed to kidnapping and homicide of Stancik. Because there are separate and distinct criminal objectives between the attempted homicide and the conspiracy to commit aggravated assault offenses, the conviction and sentence does not run afoul of § 906 or the Supreme Court's analysis in *King*.

*Id.* at 19-20.

We are not persuaded by this argument. After careful review, we find the Commonwealth's account of events to be at odds with the record; in addition, their account undercuts their argument that the evidence was sufficient to sustain Appellant's conviction of conspiracy to commit homicide,

aggravated assault, and kidnapping. As set forth above, the criminal complaint described aggravated assault as being the shooting of Stancik in the neck, not the beating in the alleyway or the pistol whipping in the car. Criminal Complaint, 9/6/17, at 2-3. The shooting was the same act referenced in the attempted murder charge. *Id.* at 2. In the criminal information, also cited above, the Commonwealth likewise based the aggravated assault charges on Appellant shooting Stancik in the neck. Criminal Information, 11/9/17, at unnumbered page 1. The Commonwealth did not name King as a participant in the conspiracy; they only identified Richard Lacks as a co-conspirator, and stated the conspiracy as being "and/or" with respect to homicide, kidnapping and aggravated assault. *Id.* at unnumbered page 2.

In its opening, the Commonwealth spoke about the events as a continuous episode, and never mentioned or suggested that the conspiracy ended when Appellant and Stancik reached the water. N.T., 2/5/19, at 20-25. In its closing argument, the Commonwealth described King as an accomplice, not a co-conspirator. N.T., 2/7/19, at 25. Again, at no point did the Commonwealth suggest there were multiple conspiracies; to the contrary, the Commonwealth described a single, continuous criminal episode. *Id.* at 12-29.

The trial court, in its charge to the jury, stated the conspiracy charge was: "to commit criminal homicide and/or aggravated assault and/or

- 28 -

kidnapping." *Id.* at 57-58. It specifically named Lacks as the co-conspirator,

not Lacks and King. *Id.* at 61. The trial court addressed the jury as follows:

> The information alleges that the defendant conspired with Richard Lacks to commit homicide and/or aggravated assault and/or kidnapping and that one or several overt acts were done. As far as numbers are concerned, the minimum requirements for conspiracy are an agreement between two people to commit one crime and one overt act committed by one of them. Thus, you may find the defendant guilty if you are satisfied that he conspired with at least one alleged co-conspirator to commit at least one alleged object crime and that he or that person did at least one alleged overt act in furtherance of the conspiracy.
>
> Before any defendant can be convicted, the 12 jurors must agree on the same person whom the defendant allegedly conspired with, the same object crime and the same overt act. And by object: crime, I mean attempted homicide, aggravated assault or kidnapping; those are the object crimes.
>
> * * *
>
> As general rule, if conspirators have agreed to commit a crime and after that one of them does any act to carry out or advance their agreement, then he has done an overt act in furtherance of their conspiracy. The other conspirators do not have to participate in the overt act or even know about it. In a sense, they are partners, and like partners, they are responsible for each other's actions.
>
> On the verdict sheet, there will be a special section for the crime of conspiracy. If you find that the Commonwealth has proved the defendant guilty beyond a reasonable doubt, you will be asked to mark the crime or crimes that you find proved beyond a reasonable doubt as the objective of the conspiracy. I charge you that a conspiracy can have as its objective one crime or many crimes, but it is your task to determine what objective has been proved beyond a reasonable doubt.

*Id.* at 61-63. After this charge, the jury returned their verdict of guilty as to

conspiracy, and found the objects of the conspiracy were homicide,

aggravated assault, and kidnapping. Verdict, 2/7/19.

It was not until sentencing that the Commonwealth first attempted to distinguish conspiracy to commit aggravated assault from the other objects (homicide and kidnapping), when it requested the trial court sentence Appellant only for conspiracy to commit aggravated assault. N.T., 6/3/19, at 19. In its opinion, the trial court acknowledged that sentencing Appellant on both attempted homicide and criminal conspiracy to commit homicide would run afoul of Section 906. Trial Court Opinion, 2/24/20, at 41. The opinion was written prior to the Supreme Court's decision in *King*, and relies entirely on our opinion in *Kelly*, which *King* effectively overruled. *See King* at 570-71.

Consistent with the foregoing, we find the Commonwealth's argument unpersuasive. This case is analogous to *King* insofar as the jury found Appellant engaged in a conspiracy to commit homicide, aggravated assault, and kidnapping, but, "because [Appellant] failed in his attempt to [kill the victim, Appellant] could not be sentenced to serve separate terms for the inchoate crime of conspiracy and attempt." *King*, 234 A.3d at 568. Accordingly, we vacate the sentence for conspiracy.

Appellant also challenges his sentences for kidnapping, stating:

[Appellant] was illegally sentenced to consecutive sentences under 18 Pa.C.S. § 2901(a)(2) and (a)(3) for kidnapping Stancik. This is because the statutory construction of 18 Pa.C.S. § 2901 and the double jeopardy clauses of the Fifth Amendment to the U.S. Constitution and the Pennsylvania Constitution, Article I, Section 10 prohibit entry of a judgment of sentence under both 18 Pa.C.S. § 2901(a)(2) and (a)(3) as they are the same criminal act.

- 30 -

Appellant's Brief at 42.

Although Appellant did not raise this claim before the trial court, a challenge to the legality a sentence is not waivable. ***Dickson***, 918 A.2d at 99. As Appellant's challenge is one of statutory interpretation,

> [o]ur review is further governed by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 et seq., under which our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. ***See*** 1 Pa.C.S.A. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. In this regard, it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include. Consequently, as a matter of statutory interpretation, although one is admonished to listen to what a statute says; one must also listen attentively to what it does not say.

***Commonwealth v. Devries***, 112 A.3d 663, 670 (Pa. Super. 2015) (citations omitted).

> The crime of kidnapping is defined as follows:
>
> (a) Offense defined.--Except as provided in subsection (a.1), a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with **any of the following intentions**:
>
> > (1) To hold for ransom or reward, or as a shield or hostage.
> >
> > (2) To facilitate commission of any felony or flight thereafter.

(3) To inflict bodily injury on or to terrorize the victim or another.

(4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S.A. § 2901(a)(1)-(4) (emphasis added).

Appellant argues:

The statute makes clear that the *actus reus* of kidnapping has a static definition but the *mens rea* is a changing variable. [Appellant] was convicted of two counts of kidnapping, with the two differing intents from (a)(2) and (a)(3), respectively. The act of kidnapping for each of these counts was plead and presented at trial to be the same acts that were committed in one episode. The "any" in reference to the alternative intent makes it clear that at least one of the intents is necessary to convict, but that possessing multiple intents does not allow for multiple convictions for one kidnapping episode.

Appellant's Brief at 43. Appellant relies on this Court's decision in

***Commonwealth v. Lopez***, 663 A.2d 746 (Pa. Super. 1995).

In ***Lopez***, the appellant pled *nolo contendere* to two counts of arson, endangering person, under 18 Pa.C.S.A. §§ 3301(a)(1)(i) and (ii), arising from a single fire. ***Lopez***, 663 A.2d at 747. At sentencing, over appellant's objections, the trial court sentenced her to consecutive sentences of four to ten years imprisonment at each count. On appeal, she argued her sentence was illegal because, "18 Pa.C.S.A. § 3301(a)(1)(i) and 18 Pa.C.S.A. § 3301(a)(1)(ii) . . . are not themselves separate offenses, but rather are alternative means for satisfying 18 Pa.C.S.A. § 3301(a)(1)." ***Id.*** at 748. We agreed, rejecting the Commonwealth's argument that the two sections of the statute, "protect distinct and separate state interests." ***Id.*** We explained:

- 32 -

> Instantly, employing our Supreme Court's example [in
> ***Commonwealth ex rel. Specter v. Vignola***, 285 A.2d 869, 871
> (Pa. 1971)], it is our conclusion that the word "or," used in its
> ordinary sense, indicates an alternative between two or more
> unlike actions.  Applying that definition to 18 Pa.C.S.A. § 3301(a),
> we read the statute to mean that any person who either
> "recklessly places another person in danger of death or bodily
> injury" or "commits the act with the purpose of destroying or
> damaging an inhabited building or occupied structure of another"
> may be prosecuted for and convicted of committing arson
> endangering persons.  However, it simply does not follow from
> this reading that a person who commits both of the above acts
> may be sentenced twice for arson endangering persons when only
> one criminal offense, *i.e.*, starting one fire, has been committed.
> Not only does such a reading ignore the plain meaning of the word
> "or," but if applied could raise grave constitutional issues.  ***See***
> ***Commonwealth v. Bostic***, 500 Pa. 345, 456 A.2d 1320 (1983)
> (intent of double jeopardy clause is to prevent courts from
> imposing more than one punishment under particular legislative
> enactment); ***Commonwealth v. Ayala***, 492 Pa. 418, 424 A.2d
> 1260 (1981) (where, practically speaking, there was only one
> offense against Commonwealth, defendant may only be punished
> for one offense, despite number of chargeable offenses arising out
> of single transaction); ***Commonwealth v. Williams***, 344
> Pa.Super. 108, 496 A.2d 31 (1985) (same).  Accordingly, because
> this Court must resolve a statutory issue by reference to the
> statute's express language, we hold that the trial court's reading
> of § 3301(a) was in error.

***Id.*** at 749.

We see no meaningful distinction between the statutory interpretation

of the arson statute in ***Lopez*** and the kidnapping statute at issue here.  A

person commits the single crime of kidnapping if he or she satisfies, "any" of

the intentions expressed in 18 Pa.C.S.A. § 2901(a)(1)-(4).  Therefore, 18

Pa.C.S.A. § 2901(a)(2) and 18 Pa.C.S.A. § 2901(a)(3) "are not themselves

separate offenses, but rather are alternative means for satisfying 18 Pa.C.S.A.

§ [2901(a)]."  ***Id.*** at 748.  If a defendant is proven to have more than one of

the expressed intentions, he can be convicted under two sections of the statute, but he cannot be sentenced under both, "when only one criminal offense, *i.e.*, [a single kidnapping], has been committed." *Id.*

On appeal, the Commonwealth asserts *Lopez* is inapposite because Appellant committed two kidnappings. Commonwealth Brief at 21. In support, the Commonwealth for the second time makes an argument that is at odds with the record. *Id.* at 20-21. The Commonwealth states:

> [Appellant] participated in two separate and distinct kidnapping acts. The first was the literal kidnapping of Marcus Stancik off the alleyway near Hayes Avenue in Washington where he was assaulted, the hood placed over his head, and then forced into the backseat of the Honda Pilot between [Appellant] and Tyree King, and eventually the retrieved firearm shoved in Stancik's side by [Appellant] while the actors drove around. This act constituted the removal of Stancik a substantial distance with the intent to inflict bodily harm or terrorize him, under § 2901(a)(3). The second kidnapping act was by [Appellant] alone when he took Stancik out of the Honda, hood still over his head and walked him to the water's edge intending to kill him. The separate act, and separate intent to facilitate the commission of the felony (attempted) murder, is separate and apart from the kidnapping across the street.

*Id.*

In addition to being implausible, this is not the argument the Commonwealth made to the jury. In its closing, the Commonwealth recounted a single kidnapping, which included the forcing of Stancik into the car, holding him at gunpoint, taking him out of the car, and walking him to the water. N.T., 2/7/19, at 21, 26, 28. The Commonwealth also argued that Appellant's act of shooting Stancik was part of the conspiracy between Appellant and

- 34 -

Lacks, not a separate act where Appellant acted alone. *Id.* at 27. The Commonwealth's appellate argument is not logical, where anytime an individual is forced into a vehicle, and then removed from the vehicle by kidnappers, there would be two separate kidnappings. Had Stancik escaped and been recaptured, for example, we might be inclined to give credence to the Commonwealth's argument. However, our review compels our agreement with Appellant that there was a single kidnapping, albeit one in which the Commonwealth proved intent under two subsections of 18 Pa.C.S.A. § 2901. As such, and pursuant to **Lopez**, we vacate Appellant's two kidnapping sentences. **See Lopez** 663 A.2d at 749. This disposition, like our disposition vacating Appellant's sentence for conspiracy, compels remand. **See Commonwealth v. Bartrug**, 732 A.2d 1287 (Pa. Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (holding sentencing error on one count in multi-count case generally requires all sentences for all counts to be vacated so court can restructure entire sentencing scheme).

<u>OUTSTANDING MOTIONS</u>

Appellant filed an application for relief on October 19, 2020, in which he requested we take judicial notice of a criminal information filed against Richard Lacks. On October 28, 2019, the Commonwealth responded by filing an application to strike, requesting that any reference to Mr. Lacks' criminal information be stricken because a criminal information "constitutes allegations and is not evidence." Application to Strike, 10/28/19, at ¶ 2. Appellant

responded on November 11, 2019. He "admitted that a criminal information was not introduced into evidence at the jury trial of the Appellant below." Answer to Application to Strike, 11/11/19, at ¶ 2. "It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case." *Commonwealth v. Martz*, 926 A.2d 514, 524 (Pa. Super. 2007). For "purposes of appellate review, what is not of record does not exist." *Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa. Super. 2008). Accordingly, we deny Appellant's application for judicial notice, and grant the Commonwealth's application to strike.

### ORDER

Denial of suppression affirmed. Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing consistent with this decision. Application for judicial notice denied. Application to strike granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2021