J-S29041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN JEROME BENJAMIN | : | |
| | : | |
| Appellant | : | No. 1456 WDA 2021 |

Appeal from the Judgment of Sentence Entered November 1, 2021
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001602-2020

BEFORE: PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:　　　　　　　　　**FILED: JANUARY 17, 2023**

Appellant, Jonathan Jerome Benjamin, appeals from the judgment of sentence imposed following his conviction of possession of a firearm by a prohibited person.[1] We affirm.

On July 9, 2020, Officers Jordan Sweany and Timothy Trump of the Washington County Adult Probation and Parole Office ("Probation and Parole Office") conducted a regular supervisory visit to Appellant's residence in Donora, Pennsylvania. At the time Appellant was on probation and was subject to weekly visits by the Probation and Parole Office. When the officers approached the home and knocked on the door, Appellant exited and stepped out onto the porch. The officers detected the smell of alcohol on Appellant

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

and also observed at least one other person inside the house from the door that had been left ajar. Appellant initially lied by saying that no one else was present in the residence, but eventually two others exited. Officer Sweany then entered Appellant's residence to conduct a walk-through of the ground floor and discovered a Smith & Wesson semiautomatic rifle in plain view on the staircase. Officer Sweany checked the rifle and discovered that it was loaded with ammunition, although no bullet was in the firing chamber.

Appellant was taken into custody for violations of probation conditions and local police were notified. Appellant was charged with possession of a firearm by a prohibited person by criminal complaint on July 27, 2020. The charge was held over after a September 9, 2020 preliminary hearing, and a bill of information was filed on September 24, 2020. Appellant filed a suppression motion on November 6, 2020. Hearings were held on the motion on January 5 and 21, 2021. On January 28, 2021, the trial court issued an order denying the suppression motion.

The case proceeded to a jury trial, and on July 21, 2021, the jury found Appellant guilty of the above-stated offense. On October 19, 2021, the trial court sentenced Appellant to 50 to 100 months' imprisonment on the firearms charge. Appellant filed a timely post-sentence motion in which he, *inter alia*, requested a new trial on the basis that he was not formally arraigned. On November, 1, 2021, the trial court issued a revised sentencing order altering a sentence at another docket that had been addressed in its prior order but leaving the sentence in this case intact. The court then denied Appellant's

post-sentence motion on November 4, 2021. Appellant thereafter filed this timely appeal.

Appellant raises the following issues on appeal:

I. Did the trial court err in the denial of the motion to suppress following the hearing on January 2[8], 2012?

[II]. Did the trial court err in denying the Appellant's post-sentence motion regarding the due process violation committed due to the Appellant not being formally arraigned?

Appellant's Brief at 5 (unnecessary capitalization omitted).[2]

Appellant first argues that the trial court erred in denying his suppression motion as the officers of the Probation and Parole Office lacked any recognized basis to conduct the warrantless search of his residence. Appellant asserts that while statutory authority for a warrantless search of an offender's property by a county probation and parole officer exists under certain circumstances, *see* 42 Pa.C.S. § 9912, Officer Sweany's testimony at the suppression hearing did not raise the inference that he had reasonable suspicion that he would find contraband or evidence of a violation of probationary conditions inside the property. In addition, Appellant posits that a search was not permissible as a protective sweep, the theory that the trial court relied on its order denying the suppression motion, because Officer

---

[2] Appellant raised a third issue in his statement of questions presented section of his brief and in his Pa.R.A.P. 1925(b) concise statement concerning an alleged error in the calculation of his prior record score. However, Appellant acknowledged in his brief that the prior record score was correctly calculated based upon his prior South Carolina robbery conviction and withdrew the issue from our consideration. Appellant's Brief at 21-22.

Sweany did not articulate any specific facts that would justify a reasonable fear for his safety or the safety of others. Rather, Appellant contends that he was cooperative with the officers' requests and any exigency was created by the officers' desire to move Appellant indoors.

Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Rosario**, 248 A.3d 599, 607 (Pa. Super. 2021) (citation omitted). We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions *de novo*. **Id.** at 607-08. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. **Id.** at 608. "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant." **Commonwealth v. Kane**, 210 A.3d 324, 329 (Pa. Super. 2019) (citation and brackets omitted).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." **Commonwealth v. Thomas**, 273 A.3d 1190, 1195 (Pa. Super. 2022). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively

unreasonable." ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013).

> With respect to the rights of probationers, this Court has explained:

> The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen. The institution of probation and parole assumes a probationer or parolee is more likely than the ordinary citizen to violate the law. Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy.

***Commonwealth v. Parker***, 152 A.3d 309, 316 (Pa. Super. 2016) (citations omitted). Nevertheless, while probationers and parolees have "a more narrowly protected privacy interest than that afforded a free individual . . . the government's interest in enforcing the terms of parole and probation cannot entirely displace a [probationer's] protected privacy rights." ***Commonwealth v. Arter***, 151 A.3d 149, 167 (Pa. 2016) (citation omitted).

Section 9912 of the Judicial Code defines the supervisory relationship between officers and offenders released on county probation and parole. 42 Pa.C.S. § 9912. This statute provides that "[a] property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 9912(d)(2). Section 9912 lists several factors that are relevant to the reasonable suspicion analysis, including the observation of the officer, information provided by the offender or others, the experience of the officer with the offender or in similar circumstances, and the prior criminal

and supervisory history of the offender. 42 Pa.C.S. § 9912(d)(6). Prior approval of a supervisor is generally required for a property search, except where exigent circumstances are present. 42 Pa.C.S. § 9912(d)(3).

In addition to a probation and parole officer's ability to conduct warrantless searches, an officer also has the statutory authority to arrest offenders they are supervising:

> An officer is declared to be a peace officer and shall have police powers and authority throughout this Commonwealth to arrest, with or without warrant, writ, rule or process, any person on probation, intermediate punishment or parole under the supervision of the court for failing to report as required by the terms of that person's probation, intermediate punishment or parole or for any other violation of that person's probation, intermediate punishment or parole.

42 Pa.C.S. § 9913.

Also relevant to this appeal is the protective sweep doctrine. "A protective sweep is 'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'" *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). The United States Supreme Court has described two levels of protective sweeps:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

***Buie***, 494 U.S. at 334; ***see also Taylor***, 771 A.2d at 1267.

"Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant." ***Commonwealth v. Potts***, 73 A.3d 1275, 1281-82 (Pa. Super. 2013) (citation omitted). "The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others." ***Id.*** at 1282 (citation omitted). When an officer conducting a protective sweep observes contraband in plain view, he is not required to ignore it. ***Id.***; ***Commonwealth v. Harrell***, 65 A.3d 420, 437 (Pa. Super. 2013). Additionally, the fact that an individual has "not yet been arrested [at the time the protective sweep occurs does] not make the scene any less dangerous" such that the protective sweep must be deemed constitutionally unsound. ***Potts***, 73 A.3d at 1282.

Officer Sweany was the sole witness at the hearings on the suppression motion. He testified that Appellant was under intensive supervision at the time of the relevant events; the level of supervision is determined based upon the type of charge the offender is serving and a risk assessment performed by the Probation and Parole Office. N.T., 1/5/21, at 6. Therefore, Appellant was subject to weekly supervision visits. ***Id.***

On July 9, 2020, Officers Sweany and Trump arrived at Appellant's residence and saw that the door was partially open. ***Id.*** at 7. Officer Sweany

knocked, and Appellant came onto the porch. *Id.* Officer Sweany immediately detected the strong odor of alcohol coming from Appellant and noted that he appeared to be under the influence. *Id.* Appellant at first denied wrongdoing and then admitted that he had consumed one or two drinks. *Id.* at 7-8.

While speaking with Appellant, Officer Sweany also noticed another individual in the house through the still-open front door. *Id.* at 8. Officer Sweany asked who else was present at the house and Appellant stated that there was no one inside. *Id.* Officer Sweany asked Appellant again who was inside, noting that he could see someone there, and Appellant denied that anyone was in his house. *Id.* Officer Sweany then announced his presence as an officer of the Probation and Parole Office and directed anyone present to exit. *Id.* Two individuals exited. *Id.*

After the other individuals exited, Officer Trump stepped onto the porch and Officer Sweany did a walk-through of the ground floor of Appellant's residence. *Id.* During the walk-through, Officer Sweany discovered the assault rifle sitting on the second or third stair on a stairway leading to the second floor; the stairway was adjacent to the living room, which was the first room that one entered through the front door. *Id.* at 11-12. Officer Sweany explained that the walk-through was for officer safety, rather than to look for contraband. *Id.* at 8, 10-11, 19.

Officer Sweany stated that Appellant's consumption of alcohol was a probation violation that was sufficient to allow for his arrest, although having other individuals in his house was not a violation. *Id.* at 17. Possession of a

firearm was also a violation of the terms of his probation. *Id.* at 13. Officer Sweany stated that in addition to the presence of others in the house and Appellant's alcohol use, he was also concerned that, from Appellant's history, he was consuming marijuana or other controlled substances. *Id.* at 11. Even though grounds for arrest were present based solely upon the consumption of alcohol, Officer Sweany had not made a decision on whether to place him under arrest when he began the walk-through of the house, and his intention was to remove Appellant from the open area out front of his home and continue the encounter inside the residence. *Id.* at 19-20. Officer Trump brought Appellant into the house as Officer Sweany was conducting the walk-through, and Officer Sweany immediately handcuffed him after discovering the firearm. *Id.* at 12.

In its January 28, 2021 order denying the suppression motion, the trial court found that Officer Sweany was in possession of sufficient articulable facts demonstrating a threat to officer safety such that a protective sweep of the first floor of Appellant's residence was justified. Order, 1/28/21, at 5 (unpaginated). The trial court noted that Appellant lied to the officers about the presence of additional individuals in his house while being questioned on the porch and therefore Officer Sweany was justified in ensuring that no other unaccounted person was present. *Id.* at 5-6. In addition, the court determined that Officer Sweany was justified in conducting a search under his supervisory powers as Appellant was in violation of his probation conditions by consuming alcohol and Officer Sweany had a reasonable basis to believe

that he would discover contraband during his cursory inspection of the house. *Id.* at 8-9.

Upon review, we agree with the trial court that Officer Sweany's walk-through of Appellant's residence was proper under the protective sweep doctrine.[3] In light of the ambiguity regarding the distance between where Officer Sweany was speaking to Appellant on the porch and where the firearm was discovered inside the house, we assume like the trial court that the walk-through would be authorized only as a second-level protective sweep, which requires that the officer is aware of specific facts to believe that the area being swept harbors an individual posing a danger to the officer or others. *Buie*, 494 U.S. at 334; *Potts*, 73 A.3d at 1282; *see also* Order, 1/28/21, at 6.

Here, Officer Sweany was in possession of specific facts that there could have been individuals present on the first floor of Appellant's house who posed a threat to officer safety. At the time of the search, Appellant was under "intensive" probation supervision requiring weekly visits due to his criminal offenses and other risk factors, and he was known to have a history of consuming illicit substances. Our Supreme Court has explained the unique

---

[3] We likewise conclude that the suppression record did not support the search of Appellant's property under Section 9912 as Officer Sweany testified that he was not searching for contraband or evidence of Appellant's violation of his probation conditions but rather he was attempting to ascertain whether anyone else was present in the house that would pose a danger to himself or his colleague, Officer Trump. *See* 42 Pa.C.S. § 9912(d)(2); *Parker*, 152 A.3d at 318; N.T., 1/5/21, at 8, 10-11, 19.

dangers posed to parole agents performing their supervisory duties in the community, which are equally applicable to probation officers:

> [I]n order to satisfy the[ir] statutory duties, parole agents, among other things, conduct routine, unannounced home visits . . . , thus risking exposure to a variety of potentially dangerous unknowns. . .
>
> Once we recognize the authority of parole officers to search parolees and their premises, . . . we cannot ignore the hazards involved in this kind of public duty. A bullet's message is deadly no matter who the sender is. A law-enforcement officer in a potentially perilous situation must have a basic right of self-protection notwithstanding the shape of his badge. As long as an officer is properly pursuing his lawful duty, the only issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger.
>
> Moreover, . . . interactions with non-offenders are inherent in parole enforcement activities. For example, parolees are commonly prohibited from associating with persons who have been convicted of certain offenses, which in turn may suggest that parole agents are authorized to inquire as to the identity of non-offenders present during a home visit for the purpose of ascertaining compliance with parole conditions. [These] ancillary aspects of a parole agent['s] duty [to interact with non-offenders during visits] . . . derive directly from their statutorily imposed functions . . . [and] may be viewed as reflecting the special needs that warrant deviations from traditional constitutional precepts in the parole enforcement realm.

***Commonwealth v. Mathis***, 173 A.3d 699, 708-09 (Pa. 2017) (citations and quotation marks omitted) (holding that parole agents may conduct stop-and-frisks of non-offenders when supported by reasonable suspicion).

In addition to Officer Sweany's awareness of Appellant's criminal history and intensive supervision needs, and the general dangers inherent to supervision of probationers, Officer Sweany detected that Appellant was

- 11 -

inebriated with alcohol immediately upon making contact with him. Appellant lied about his consumption of alcohol and then lied again to the officers when asked whether anyone was inside his home. Based upon his concerns about conducting the supervisory visit in a safe location, Appellant's history of drug use and alcohol use on the date in question, and Appellant's evasive answers concerning the presence of others in his home, Officer Sweany was justified in conducting a cursory inspection of the ground floor of Appellant's home to see if other individuals were present there. *See Commonwealth v. Hall*, 199 A.3d 954, 960 (Pa. Super. 2018) ("Hearing the sounds of several people moving inside the apartment for several minutes before the occupants opened the door would cause a reasonably prudent officer to believe that that there was an unknown number of people in the apartment and that one of them might have hidden inside before the door was opened."); *Commonwealth v. Bostick*, 958 A.2d 543, 558-59 (Pa. Super. 2008) (where officers are justified in entering vestibule to conduct arrest, they may also conduct walk-through of home by opening bedroom and basement doors to ensure no one was hiding inside).

Furthermore, the fact that Appellant was not actually under arrest when Officer Sweany conducted the walk-through does not invalidate the basis for the protective sweep; Appellant's alcohol consumption was grounds for arrest as a violation of a probationary condition, and Officer Sweany intended to move Appellant inside while he continued the interaction. *See* 42 Pa.C.S. § 9913 (probation officer has power to arrest offenders for violation of conditions

of probation); ***Potts***, 73 A.3d at 1282 (defendant need not be actually under arrest at time of protective sweep). Moreover, the semiautomatic rifle was discovered in plain view on the staircase, a location where an individual could have been discovered. ***See Potts***, 73 A.3d at 1282; ***Harrell***, 65 A.3d at 437; ***see also Commonwealth v. Witman***, 750 A.2d 327, 336 (Pa. Super. 2000) (protective sweep may "target only those areas where a person could reasonably be expected to hide") (citation omitted). Therefore, the trial court properly denied the suppression motion on the basis that the firearm was discovered during a lawful protective sweep.

Appellant next argues that the trial court erred by denying the claim asserted in his post-sentence motion that the lack of a formal arraignment infringed his due process rights. Appellant avers that he was prejudiced because he was not aware at trial of the exact nature of the charge that the Commonwealth was pursuing, and he asserts that the formal arraignment "would have alleviated the resulting contradictory charges (ammunition available or no ammunition available) that were sent to the jury," a factor that affected the calculation of his offense gravity score ("OGS"). Appellant's Brief at 24. Appellant argues that, if he had been formally arraigned, he would have challenged the issue pertaining to the jury charge in a pre-trial motion or at the outset of trial.[4]

_____

[4] We assume for the purpose of our discussion here that Appellant was not formally arraigned. However, we note that the docket reflects that formal

- 13 -

Appellant's argument focuses on the interplay between the verdict sheet submitted to the jury and the OGS used in calculating his recommended sentence according to the Pennsylvania Sentencing Guidelines. While Appellant was charged and convicted of one violation of Section 6105(a)(1) of the Pennsylvania Uniform Firearms Act for possession of a firearm by a prohibited person, 18 Pa.C.S. § 6105(a)(1), the verdict sheet listed the offense twice, once as "Possession of a Firearm Prohibited with ammunition available" and a second time as "Possession of a Firearm Prohibited without ammunition available"; the jury foreperson circled "GUILTY" on both lines. Verdict Sheet, 7/21/21; *see also* N.T., 7/21/21, at 321. Under the Sentencing Guidelines, Section 6105 is a "subcategorized offense," that "is assigned multiple offense gravity scores based on additional sentencing factors, which the court determines at sentencing." 204 Pa. Code §§ 303.3(b), 303.15. Section 6105 is subcategorized according to the distinction between possession of a firearm that is loaded or with ammunition available in contrast to a firearm that is not loaded and where ammunition is not available. 204

---

arraignment was scheduled on September 10, 2020 to take place on October 29, 2020, and the docket contains an entry that the formal arraignment was held on October 29, 2020, listing the attorneys present. Nevertheless, no notes of testimony for the arraignment were filed, and no document appears in the certified record memorializing the occurrence of the formal arraignment. The record also reflects that a trial court hearing was held on September 25, 2020—after the preliminary hearing but before the formal arraignment was scheduled to occur—at which Appellant indicated to the court that he was requesting a jury trial. *See* Order, 9/28/20. This proceeding was not transcribed, and it is not clear whether Appellant waived his right to a formal arraignment on that date.

Pa. Code § 303.15. Because the jury found Appellant to have possessed the firearm with ammunition available, he was subject to an OGS of 10, whereas if it were determined that the firearm was not loaded and ammunition was unavailable his OGS would have been 9. *Id.*

We review Appellant's claim that his due process rights were violated as a result of the lack of a formal arraignment under a *de novo* standard of review. *Commonwealth v. Leland*, 204 A.3d 461, 465 n.2 (Pa. Super. 2019). Pursuant to Rule of Criminal Procedure 571, the defendant shall be advised at arraignment of the right to representation of counsel, the nature of the charges contained in the information, the right to file pre-trial motions, and the consequences that will result if the defendant is absent without cause from any proceeding where presence is required. Pa.R.Crim.P. 571(C).

"Due process of law does not require that any technical form of procedure be followed so long as the identity of the accused is definite, sufficient notice of the charges is given, and ample opportunity to plead afforded." *Leland*, 204 A.3d at 466 (citation omitted). Furthermore, defects in an arraignment do not constitute reversible due process error unless they prejudice the defendant's rights. *Id.* (relying on *Garland v. Washington*, 232 U.S. 642, 646 (1914)), which held that where defendant was not arraigned before second trial on same charge as first trial and defendant was fully able to defend himself at retrial, lack of formal arraignment was "technical" omission of a "wholly unimportant formality," not a due process violation). Where a defendant receives notice of the exact charges and fully

defends himself from the charges prior to and through trial, no defect will be found. *Id.* at 468.

First, we note that, while his appellate claim is based on the absence of an arraignment, Appellant does not aver that he was unaware of the charges or his rights as a criminal defendant or that he was prejudiced because he could not enter a plea; instead, his focus is solely on the purportedly confusing verdict sheet which breaks out the Section 6105 charge according to the subcategorized factors, as described above. Therefore, Appellant's claim is effectively a challenge to the form of the verdict sheet rather than the absence of his formal arraignment. However, Appellant's counsel expressly agreed at trial to the form of the verdict sheet, which was discussed at the charging conference. *See* N.T., 7/21/21, at 266 (defense counsel stating "I agree" to prosecutor's suggestion that both ammunition available and ammunition unavailable should be included on the verdict slip). Accordingly, Appellant cannot now argue that the wording of the verdict sheet caused the jury to be confused.

Furthermore, to the extent Appellant argues that his due process rights were violated as a result of the absence of a formal arraignment, we find this argument waived. "In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court." *In the Interest of L.V.*, 209 A.3d 399, 418 (Pa. Super. 2019) (citation omitted); *see also* Pa.R.A.P. 302(a). "The issue preservation requirement ensures that the trial court that initially hears

a dispute has had an opportunity to consider the issue, which in turn advances the orderly and efficient use of our judicial resources, and provides fairness to the parties." *Commonwealth v. Hill*, 238 A.3d 399, 407 (Pa. 2020) (citation and brackets omitted). Appellant was represented by counsel throughout the proceeding below, including the same attorney at trial as at the time that his formal arraignment was scheduled to occur. Therefore, Appellant did not lack knowledge of the fact that he had not been arraigned at the time his trial began. Yet Appellant did not raise the issue at the outset of trial, during trial, or even at the time the jury rendered its verdict. Instead, he waited to raise it until he filed his post-sentence motion. Appellant thus did not provide the trial court with an opportunity to address his claim of error at any relevant point when any harm caused by the absence of the formal arraignment could have been addressed. *See Hill*, 238 A.3d at 407; *see also Garland*, 232 U.S. at 646 (stating that waiver of right to formal arraignment should be "conclusively implied" where the defendant proceeded to trial without objection to its absence and no claim of error was brought until appellate review); *Leland*, 204 A.3d at 463-64 (defendant preserved issue at the outset of trial on charge as to which the defendant was not arraigned).

Moreover, even if we reached the merits of Appellant's due process argument, it would still fail. Appellant, who was represented by counsel during all relevant stages of the proceeding, faced one count of violating Section 6105(a)(1) from the date he was initially charged via the criminal complaint through trial and sentencing. While the verdict sheet listed the offense twice,

this was based upon the question of whether ammunition was available, a circumstance that was necessary to address for the proper computation of his OGS and guideline recommendation. Furthermore, Appellant was repeatedly apprised prior to trial that the evidence would show that the semiautomatic rifle found in his home was loaded with ammunition. Officer Sweany testified at both the preliminary hearing and suppression hearing concerning his examination of the rifle and discovery that the magazine contained ammunition. N.T., 1/5/21, at 13; N.T., 9/9/20, at 4. The order denying Appellant's suppression motion also noted Officer Sweany's testimony that the rifle was loaded. Order, 1/28/21, at 2. Because Appellant has not shown any prejudice to his ability to fully defend himself at trial from the charges against him, the apparent lack of a formal arraignment in this case did not constitute a violation of his due process rights. *Leland*, 204 A.3d at 468.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/17/2023