J-S43037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZARIYUS JOHNSON | : | |
| | : | |
| Appellant | : | No. 1077 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 28, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0000696-2019


BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                   **FILED APRIL 13, 2023**

Appellant Zariyus Johnson appeals from the judgment of sentence imposed after a jury convicted him of attempted rape, two counts of kidnapping, and related offenses.  Appellant challenges the sufficiency of the evidence and the discretionary aspects of his sentence.  Following our review, we affirm Appellant's convictions, the judgment of sentence in part, and vacate in part as to the sentence of kidnapping at count two.

The trial court summarized the facts of this case as follows:

On June 16, 2018, at approximately 10:15 p.m., [the victim] was walking home from her job in Norristown, PA on a back alley off Chestnut Street when [Appellant] confronted her and pulled out a gun from his waistband.  [The victim] recognized [Appellant] from an encounter the previous month in which she saw [Appellant] while waiting for her mom outside of a Norristown convenience store.  Specifically, [Appellant] had asked [the victim] if she wanted to purchase drugs and then provided her with his phone number in the event she wanted to go out with him.  [Appellant] stated, "why didn't you call me bitch?," placed the gun into [the

victim's] back and forced her to walk away from her house and towards the rear of a vacant house located on Chestnut Street. [Appellant] forced [the victim] to walk down some steps and pointed the gun at her face while stating that he was going to force her to perform oral sex on him. [Appellant] proceeded to pull his pants down and forced [the victim] to place his penis in her mouth. [Appellant] eventually had [the victim] stop and pressed the front of her body up against a wall while positioning himself behind her. At this time [Appellant] removed [the victim's] pants and pressed his penis against her buttocks. [The victim] begged [Appellant] to stop and informed him that she was on her period. [Appellant] subsequently forced [the victim] to get on her knees and perform oral sex on him again. [Appellant] pulled [the victim's] hair as this was happening, called her a bitch several times and also smacked her in the face. [Appellant] eventually ejaculated and his semen landed on [the victim's] face and hand. Following the encounter, [Appellant] put his pants back on and threatened [the victim] to not say anything about what had happened because he knew where she lived. Following his issuance of this threat, [Appellant] walked casually down the alley away from [the victim].

[The victim] subsequently ran home and told her sister and mother what had happened. [The victim's] mother called the police and, upon their arrival, [the victim] showed them where the assault had occurred. Medics later transported [the victim] to Abington Hospital where she provided a statement to a nurse and a rape kit was completed. The rape kit involved obtaining swabs of [the victim's] vagina, rectum, mouth, face, external genitalia and hands. On June 19, 2018, [the victim] provided a formal statement to the police in which she informed them regarding the details of the assault three (3) days earlier. On June 25, 2018, authorities interviewed [Appellant] and obtained consent to perform a DNA swab of [Appellant's] mouth. Authorities submitted the swabs from the rape kit and from [Appellant] to the Pennsylvania State Police (PSP) for analysis. The PSP analysis report revealed that [Appellant's] DNA matched the DNA recovered from an oral swab obtained during [the victim's] rape kit. Authorities later arrested [Appellant].

Trial Ct. Op., 7/28/22, at 1-2 (some formatting altered).

- 2 -

On October 20, 2021, following a two-day trial, a jury found Appellant guilty of two counts of kidnapping, and one count each of attempted rape—forcible compulsion, involuntary deviate sexual intercourse (IDSI)—forcible compulsion, IDSI—threat of forcible compulsion, indecent assault without consent, unlawful restraint, and possession of an instrument of crime (PIC).[1]

On March 28, 2022,[2] the trial court sentenced Appellant to an aggregate term of fifteen to thirty years' imprisonment followed by six years of probation. *Id.* at 7-8. Specifically, the trial court sentenced Appellant to consecutive terms of 50 to 100 months' imprisonment for kidnapping (count one), 60 to 120 months' imprisonment and three years of probation for attempted rape—forcible compulsion (count three), and 70 to 140 months' imprisonment and three years of probation for IDSI—forcible compulsion (count five). N.T. Sentencing Hr'g, 3/28/22, at 6-7. The trial court also sentenced Appellant to forty-one to eighty-two months' imprisonment for kidnapping (count two) and one to two months' imprisonment for PIC (count thirteen), to be served

---

[1] 18 Pa.C.S. §§ 2901(a)(2), 2901(a)(3), 901(a), 3123(a)(1), 3123(a)(2), 3126(a)(1), 2902(a)(1), and 907(a), respectively.

[2] We note that the trial court initially imposed Appellant's sentence on February 28, 2022. After the trial court amended its original sentencing order to include a consecutive term of mandatory probation, Appellant filed a post-sentence motion in which he argued that the trial court erred because it did not impose the amended sentence in open court. On March 28, 2022, the trial court granted Appellant's post-sentence motion, vacated the previous judgment of sentence, and held a new sentencing hearing.

concurrent to Appellant's sentence at count five.[3]  The trial court concluded that, for purposes of sentencing, Appellant's convictions for IDSI—threat of forcible compulsion (count six) and indecent assault (count seven) merged with count five and that unlawful restraint (count eleven) merged with count one.  *Id.* at 7-8.  The trial court also ordered Appellant to register as a Tier III offender under the Sexual Offender Registration and Notification Act[4] (SORNA) and issued a no-contact order.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

---

[3] As noted, Appellant was convicted and sentenced for two counts of kidnapping, one under 18 Pa.C.S. § 2901(a)(2) (count one) and one under 18 Pa.C.S. § 2901(a)(3) (count two).  Although both charges were based on a single criminal act, the trial court found that the kidnapping convictions did not merge for sentencing purposes because each subsection required an element that the other did not.  **See** N.T. Sentencing Hr'g, 2/28/22, at 6; **see also** 42 Pa.C.S. § 9765.  In reaching that conclusion, the trial court relied on **Commonwealth v. Garner**, 288 MDA 2014, 2015 WL 7302587 (Pa. Super. filed Apr. 7, 2015) (unpublished mem.).  **See** N.T. Sentencing Hr'g, 2/28/22, at 6.  However, because **Garner** is an unpublished decision by this Court that was filed prior to May 1, 2019, it is not precedential and cannot be cited or relied upon for its persuasive value.  **See, e.g.**, **Commonwealth v. Finnecy**, 249 A.3d 903, 910 n. 9 (Pa. Super. 2021); Pa.R.A.P. 126(b).  In any event, as explained below, this Court's precedential opinion in **Commonwealth v. Rosario**, 248 A.3d 599 (Pa. Super. 2021), *appeal denied*, 262 A.3d 1258 (Pa. 2021), *cert. denied* 142 S. Ct. 1143 (2022), compels us to conclude that the kidnapping charges merge for sentencing purposes.

[4] 42 Pa.C.S. §§ 9799.10-9799.41.

1. Pursuant to **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993) and its progeny did the internal inconsistencies in the Commonwealth['s] case, namely the inconsistencies between the victim's testimony, her statements to police, and her statements to a forensic nurse examiner regarding the numbers of times that she was forced to perform oral sex and whether it occurred before [Appellant] attempted intercourse as well as the lack of sperm on swabs taken from the victim's face when she claimed [Appellant] had ejaculated there, render the Commonwealth's evidence so unreliable that it was insufficient to prove the charges in question beyond a reasonable doubt?

2. At sentencing, did the lower court err in failing to find or consider any mitigating circumstances when the Pre-Sentence Investigation Report noted [Appellant] had in fact endured the death of his father when he was a teenager and also had a loving relationship with his children?

Appellant's Brief at 4-5.[5]

## Sufficiency of the Evidence

In his first issue, Appellant argues that the victim's testimony was so inconsistent as to "render any verdict based on it unreliable." Appellant's Brief at 16 (citing **Karkaria**, 625 A.2d at 1170). Specifically, Appellant claims that

---

[5] The Commonwealth argues that Appellant waived his sufficiency challenge because Appellant's Rule 1925(b) statement does not specify the charges or elements for which he claims the evidence was insufficient. Commonwealth's Brief at 6-7. Appellant's Rule 1925(b) statement does not identify the elements that Appellant claims the Commonwealth failed to prove at trial. **See** Pa.R.A.P. 1925(b) Statement, 6/13/22, at 1. It is well settled that a vague challenge to the sufficiency of the evidence may result in waiver. **See Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017). Here, the trial court addressed Appellant's sufficiency claims, and the case against Appellant was relatively straightforward. **See** Trial Ct. Op. at 8-11. Therefore, we decline to find waiver. **See Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (*per curiam*).

the victim initially reported that her attacker first attempted to pull her pants down and only later forced her to perform oral sex, but that the victim presented those events in the opposite order during her testimony at trial. *Id.* Appellant further contends that the victim's testimony that her attacker ejaculated on her face is inconsistent with testimony from the forensic nurse examiner, who stated that she did not find any traces of semen on the swabs taken from the victim's face. *Id.* at 17.

> The standard of review for a sufficiency challenge is well settled:
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

Generally, challenges to the verdict based on inconsistent testimony implicate the weight of the evidence, not the sufficiency, because issues of credibility are for the jury to resolve. *See Commonwealth v. Smith*, 181 A.3d 1168, 1186 (Pa. Super. 2018). However, our Supreme Court has recognized an exception to "the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based

upon it could amount to no more than surmise or conjecture." ***Karkaria***, 625 A.2d at 1170 (citation omitted); ***see also Smith***, 181 A.3d at 1186 (quoting ***Karkaria***); ***accord Commonwealth v. Brown***, 52 A.3d 1139, 1157 n.18 (Pa. 2012) (reiterating that in "extreme situations where witness testimony is so inherently unreliable . . . that it makes the jury's choice to believe that evidence an exercise of pure conjecture, any conviction based on that evidence may be reversed on the grounds of evidentiary insufficiency . . . .").

In ***Karkaria***, the defendant was charged with rape and other offenses based on allegations that he sexually assaulted his stepsister approximately 300 times between April 9, 1984 and September 19, 1984 while he was babysitting at the complainant's home. ***Karkaria***, 625 A.2d at 1167. At trial, the complainant testified that the defendant assaulted her in 1981, which was outside of the timeframe in which the charges were based. ***Id.*** at 1168. Further, the complainant was unable to provide details concerning any other instance of assault or specify when or how those assaults may have occurred. ***Id.*** at 1171. The complainant also testified that she never experienced pain during the sexual assaults and never objected to being in the defendant's care. ***Id.*** at 1168. On appeal, our Supreme Court explained:

> In order for the jury in this case to have concluded that [the complainant] was forcibly raped by [the defendant], the jury would have had to conclude that [the complainant] had been forced to submit to sexual intercourse at least once between April 9, 1984 and September 19, 1984. Since there was no direct evidence of sexual intercourse between those dates, the jury in order to convict, would have had to conclude, beyond a reasonable doubt, that the [complainant] had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any

physical evidence to support the contention that she was so victimized, and without any specific recollection by [the complainant] as to a date certain upon which even one of the several hundred assaults occurred.

*Id.* at 1170-71. Therefore, the High Court concluded that "the evidence presented at trial when carefully reviewed in its entirety, is so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." *Id.* at 1172 (footnote omitted).

Instantly, the trial court addressed Appellant's claim as follows:

[I]n contrast with the extreme irregularities surrounding the [complainant's] testimony in *Karkaria*, [] [the victim's] testimony is not riddled with inconsistencies nor is this a case where the jury rendered a verdict based solely upon vague and contradictory evidence that fails to establish the elements of the crimes charged. . . .

\* \* \*

[The evidence presented at trial] is vastly different from the evidence at issue in *Kakaria* []. When viewed in a light most favorable to the Commonwealth as the verdict winner, the evidence plainly supports a finding beyond a reasonable doubt that [Appellant] committed a sexual assault at gunpoint upon [the victim] and kidnapped her during the course of this assault. The slight variances between [the victim's] trial testimony, her police statement and her patient narrative, and the lack of any seminal material on her face do not compel a different conclusion and come nowhere close to constituting "exceptional circumstances" wherein *Karkaria* [] is applicable.

The variances identified by [Appellant] were miniscule and do not alter the main body of [the victim's] testimony which sufficiently established the elements of each of [Appellant's] convictions. This testimony was corroborated by evidence demonstrating that [Appellant's] DNA was the major component found in the seminal material recovered from inside [the victim's] mouth. Thus, any inconsistencies within [the victim's] trial testimony were questions of credibility for the fact finder to resolve and any questions of credibility relate to the weight, not sufficiency, of the evidence. It

was within the sole province of the jury whether to believe all, part or none of the testimony. The identified variances do not bring this matter within the purview of **Kakaria** [] and therefore cannot render the evidence insufficient as a matter of law.

Trial Ct. Op. at 8-11 (citations omitted and formatting altered).

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we have no basis to conclude that the victim's testimony was so unreliable that it undermined the validity of the jury's verdict. **See Karkaria**, 625 A.2d at 1170; **Brown**, 52 A.3d at 1157 n.18. At trial, the victim identified Appellant as the assailant, recounted the threats that Appellant made against her, and described the sexual acts that Appellant forced her to perform. **See** N.T. Trial, 10/19/21, at 44-62. The victim's trial testimony was also consistent with the statement that she provided to police. **See** N.T. Trial, 10/20/21, at 7-17. Further, unlike **Karkaria**, the Commonwealth presented physical evidence establishing that Appellant's DNA matched the DNA that the police gathered from the victim's rape kit. **See** N.T. Trial, 10/19/21, at 130-32, 134. Therefore, on this record, we conclude that the evidence was sufficient to sustain Appellant's conviction. **See Widmer**, 744 A.2d at 751. For these reasons, Appellant is not entitled to relief on this issue.

### Discretionary Aspects of Sentencing

In his second issue, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 19. Specifically, Appellant argues that the trial court failed to consider mitigating factors, including his prior record score

of zero and information from the pre-sentence investigation (PSI) report which stated that Appellant's father died when he was fourteen years old and that Appellant is a loving father to his own children. *Id.*

It is well settled that

challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017) (some citations omitted and formatting altered).

Here, the record reflects that Appellant did not raise this claim at sentencing, nor was it included in a post-sentence motion.[6] Accordingly, Appellant's claim is waived. *See Proctor*, 156 A.3d at 273; Pa.R.Crim.P. 720(b)(1).

---

[6] We note that when a trial court modifies a sentence pursuant to a timely filed post-sentence motion, the defendant is not required to file another post-sentence motion to preserve a sentencing issue for appeal if he raised that issue in his prior post-sentence motion. *See* Pa.R.Crim.P. 720, Cmt. However, Appellant did not raise this issue in his initial March 10, 2022 post-sentence motion, nor did he file a post-sentence motion raising this issue after the trial court imposed the instant sentence on March 28, 2022. Therefore, Appellant's claim is waived.

**Merger**

Finally, we must address whether Appellant's sentences for kidnapping should have merged for sentencing purposes. Although Appellant does not raise this issue on appeal, we may address such issues *sua sponte*. **See Commonwealth v. Watson**, 228 A.3d 928, 941 (Pa. Super. 2020) (stating that questions concerning merger implicate the legality of a sentence, and this Court may address such issues *sua sponte*); **see also Commonwealth v. Tucker**, 143 A.3d 955, 960 (Pa. Super. 2016) (citation omitted) (stating that "[a]n illegal sentence must be vacated").

When reviewing the legality of a sentence, "our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Tighe**, 184 A.3d 560, 584 (Pa. Super. 2018) (citations omitted).

Section 9765 of the Sentencing Code provides as follows:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

This Court has explained, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Martinez**, 153 A.3d 1025, 1030 (Pa. Super. 2016) (citations omitted).

The crime of kidnapping is defined as follows:

**(a) Offense defined**.—Except as provided in subsection (a.1), a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with **any of the following intentions**:

> (1) To hold for ransom or reward, or as a shield or hostage.

> (2) To facilitate commission of any felony or flight thereafter.

> (3) To inflict bodily injury on or to terrorize the victim or another.

> (4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S. § 2901(a)(1)-(4) (emphasis added).

In **Rosario**, this Court addressed whether the defendant's convictions for kidnapping under two different subsections should merge for sentencing purposes. In that case, the defendant was charged with kidnapping at two separate subsections based on a single criminal act. **Rosario**, 248 A.3d at 619. On appeal, the defendant argued that his sentences for Subsection 2901(a)(2) and Subsection 2901(a)(3) violated the constitutional prohibition against double jeopardy because both charges were based on the same criminal act. **Id.**

Ultimately, the **Rosario** Court agreed with the defendant that the kidnapping convictions should have merged for sentencing purposes. In reaching that conclusion, the Court explained:

A person commits the single crime of kidnapping if he or she satisfies, "any" of the intentions expressed in 18 Pa.C.S. §

- 12 -

2901(a)(1)-(4). Therefore, 18 Pa.C.S. § 2901(a)(2) and 18 Pa.C.S. § 2901(a)(3) are not themselves separate offenses, but rather are alternative means for satisfying 18 Pa.C.S. § 2901(a). If a defendant is proven to have more than one of the expressed intentions, he can be convicted under two sections of the statute, but he cannot be sentenced under both, when only one criminal offense, *i.e.*, a single kidnapping, has been committed.

*Id.* at 621 (citations omitted and formatting altered). Therefore, the **Rosario** Court vacated the defendant's judgment of sentence and remanded for resentencing. *Id.* at 622.

Here, like in **Rosario**, although Appellant was charged with kidnapping under two separate subsections, both offenses were based on the same underlying criminal act.[7] **See** Criminal Information, 5/8/19, at 1 (stating that Appellant unlawfully removed the victim a substantial distance or unlawfully confined the victim for a substantial period with intents to (1) facilitate a felony or flight thereafter and (2) inflict bodily injury on or to terrorize the victim); **see also** N.T. Trial, 10/19/21, at 44-62 (reflecting that Appellant committed a single act of unlawfully removing and confining the victim). Therefore, Appellant's kidnapping convictions should have merged for sentencing purposes. **See Rosario**, 248 A.3d at 621; **see also Martinez**, 153 A.3d at 1030. Accordingly, we are constrained to vacate the sentence imposed for kidnapping at count two. **See, e.g.**, **Tucker**, 143 A.3d at 968 (affirming the defendant's convictions but vacating an illegal sentence). Further, we note

---

[7] The trial court concluded at the first sentencing hearing that Appellant's two convictions for kidnapping did not merge. **See** N.T. Sentencing Hr'g, 2/28/22, at 6. However, the trial court did not address merger any further in its Rule 1925(a) opinion.

that because the trial court imposed a concurrent sentence for the kidnapping conviction at count two, our disposition does not upset the trial court's overall sentencing scheme. Therefore, it is not necessary to remand this matter for resentencing. ***See Commonwealth v. Thur***, 906 A.2d 552, 569-70 (Pa. Super. 2006).

For these reasons, we affirm Appellant's convictions, vacate the sentence imposed at count two, and affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part, and vacated in part as to the sentence imposed at count two. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/13/2023*