J-S41023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL CHARLY HUSTI-LUCA | : | |
| | : | |
| Appellant | : | No. 550 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 8, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001808-2023

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.: **FILED FEBRUARY 13, 2025**

Appellant, Paul Charly Husti-Luca, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his stipulated bench trial convictions for driving under the influence of a controlled substance, driving with a suspended license, and failure to use a turn signal.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On July 4, 2022, around 9:15 p.m., Trooper Corey James was on patrol in Richland Township, Bucks County. He observed a red Honda Civic fail to use a turn signal when turning off of Reservoir Road, and then delay using a turn signal when merging into traffic from a turning lane. The trooper began to

---

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(iii) and 3802(d)(2), 1543(a), and 3334(a), respectively.

follow the car.[2]  Subsequently, Trooper James observed the driver of the Civic fail to use his turn signal properly when merging into the right lane of traffic; Appellant signaled once while already in the process of merging.[3]

After witnessing Appellant delay the use of his turn signal, cross a fog line, and turn into a Wawa parking lot while again delaying the use of his turn signal, Trooper James activated his lights and sirens.[4]  Trooper James approached Appellant at the gas pump and observed Appellant's glassy eyes and disheveled appearance.  Appellant was unable to produce a valid license and Trooper James confirmed that Appellant's license was suspended. Trooper James noticed the odor of burnt marijuana and administered field sobriety tests, which Appellant failed.  Trooper James then placed Appellant under arrest.

Thereafter, Appellant filed a motion to suppress, arguing that Trooper James lacked reasonable suspicion or probable cause to initiate the traffic

---

[2] At the suppression hearing, the Commonwealth introduced Trooper James' mobile video recording ("MVR") footage; this footage is contained within the certified record and this Court was able to review same.  At the suppression hearing, Trooper James testified that he observed Appellant fail to use his turn signal when turning off of Reservoir Road.  (*See* N.T. Suppression Hearing, 1/8/24, at 28).  He explained that the MVR recording begins either when he self-initiates the recording, or when he activates his lights.  (*See id.*).  Trooper James further explained that the MVR captures 30 seconds of footage prior to activation, and that, in this case, the video did not capture Appellant's failure to use his turn signal.  (*See id.*)  (*See also* Commonwealth's Trial Ex. 2, Dash Cam Video, at 00:00-00:17).

[3] *See* Commonwealth's Trial Ex. 2, Dash Cam Video, at 00:45-00:47.

[4] *See* Commonwealth's Trial Ex. 2, Dash Cam Video, at 00:50-00:57.

stop. On January 8, 2024, following a suppression hearing, the court denied the motion. That same day, the matter proceeded to a stipulated bench trial, after which the court convicted Appellant of the above-mentioned offenses and sentenced him to 72 hours to 6 months' incarceration.

Appellant timely filed a notice of appeal on February 7, 2024. On February 12, 2024, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On February 28, 2024, the trial court granted Appellant's motion for extension of time to file a statement, and Appellant filed his Rule 1925(b) statement on March 22, 2024.

On appeal, Appellant raises the following issues for review:

> A. Did the trial court err in denying Appellant's Motion to Suppress where Trooper James lacked reasonable suspicion or probable cause to conduct a traffic stop of Appellant?
>
> B. Did the trial court err in denying Appellant's Motion to Suppress where Trooper James unlawfully continued the detention of Appellant after completing the mission of the traffic stop, due to a lack of reasonable suspicion?

(Appellant's Brief at 4).

In Appellant's first issue, he argues that Trooper James lacked reasonable suspicion or probable cause to conduct the traffic stop. Appellant claims that Trooper James lacked probable cause to believe a violation of the Vehicle Code had occurred because Appellant was able to make the lane change safely. Appellant insists that even if he violated the distance requirements of 75 Pa.C.S.A. § 3334,[5] that statute does not apply to lane

_____

[5] We reproduce the text of this statute *infra*.

- 3 -

changes, only to turns. Regardless of whether probable cause or reasonable suspicion applies, Appellant contends that Trooper James lacked the requisite level of suspicion to stop Appellant. According to Appellant, there was no investigatory purpose to stopping him that was relevant to a suspected violation of failure to use a turn signal. Further, Appellant suggests that the record is devoid of evidence of criminal conduct: he was not driving erratically or aggressively, and he stopped appropriately at a traffic light and gas pumps. Appellant concludes the trial court improperly denied his motion to suppress on these grounds. We disagree.

> Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Rosario*, 248 A.3d 599, 607 (Pa.Super. 2021). We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions *de novo. Id.* at 607-08. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. *Id.* at 608. "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant." *Commonwealth v. Kane*, 210 A.3d 324, 329 (Pa.Super. 2019).

*Commonwealth v. Rivera*, 316 A.3d 1026, 1031 (Pa.Super. 2024).

> A police officer has the authority to stop a vehicle when he or she has **reasonable suspicion** that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have **probable cause** to initiate the stop.

- 4 -

> Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

*Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa.Super. 2013) (internal citations and quotations omitted) (emphasis in original). *See also Commonwealth v. Gurung*, 239 A.3d 187, 191 (Pa.Super. 2020) (noting that where stop is based on observed violation of Vehicle Code or otherwise non-investigable offense, officer must have probable cause to make constitutional traffic stop). A "police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Id.*

When determining whether police had probable cause, this Court employs a totality of the circumstances analysis. *Brown, supra*.

> [W]hile an actual violation of the [Motor Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Motor Vehicle Code] in order to lawfully stop the vehicle. The issuance of a citation by [a police] officer for a violation of the [Motor Vehicle Code] is a matter within the sole discretion of that [police] officer.

*Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa.Super. 2005) (citations and original brackets omitted).

The Motor Vehicle Code provides, in pertinent part, as follows:

**§ 3334. Turning movements and required signals**

**(a) General rule.—**Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

**(b) Signals on turning and starting.—**At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S.A. § 3334(a)-(b). The distance requirements of Section 3334(b) do not apply to lane changes, only to turns. *See Commonwealth v. Slattery*, 139 A.3d 221, 224 (Pa.Super. 2016). Nevertheless, this Court has explained that the plain language of Section 3334 indicates "that drivers may only move from one lane of traffic to another if the driver **both** can make the movement safely **and** has given an appropriate signal." *Gurung, supra* at 192 (emphasis in original).

Instantly, following the suppression hearing, the court issued findings of fact and conclusions of law. In doing so, the court concluded that Trooper James had observed specific violations of the Motor Vehicle Code, noting that the court had reviewed Trooper James' MVR footage and found his testimony credible. (N.T. Suppression Hearing at 55-59). In its opinion, the court further explained:

> Here, Trooper James testified credibly that he observed Appellant merge into a lane without using his turn signal until he was three-quarters into the lane on three separate

- 6 -

occasions. After then observing Appellant cross over a fog line, Trooper James activated his lights and sirens to effectuate the traffic stop. This [c]ourt also viewed Trooper James' MVR footage and confirmed his testimony. As this case is analogous to the facts in **Commonwealth v. Gurung**, where the Superior Court found the officer possessed probable cause to stop the defendant and denied the defendant's motion to suppress, this [c]ourt found that the traffic stop of Appellant's vehicle was lawful. … To hold otherwise would force officers to abandon legitimate observations of criminal activity.

(Trial Court Opinion, 4/4/24, at 6).

We agree with the court's analysis. Trooper James testified:

So [Appellant's] vehicle coming onto North West End Boulevard traveling southbound, as he came off of Reservoir Road[,] he **failed to use a turning indicator** going into the center median. From there [I] slowed down because the vehicle was slowing.

(N.T. Suppression Hearing at 11) (emphasis added). Although Trooper James testified that Appellant's failure to use the turn signal was not captured on the MVR, the court nevertheless found his testimony regarding the circumstances of the traffic stop credible, we see no reason to disturb this determination on appeal.[6] **See Rivera, supra**. Therefore, because Trooper James credibly testified that he observed Appellant **fail** to use his turn signal when merging off of Reservoir Road, this observation alone provided him with probable cause to initiate a stop of Appellant's vehicle under Section 3334(a). **See** 75 Pa.C.S.A. § 3334(a); **Gurung, supra**. Consequently, Appellant's first issue on appeal merits no relief.

_____

[6] Our review of the Commonwealth's Exhibit 2, containing Trooper James' MVR footage, also confirms that the court's summary of the encounter is accurate.

In Appellant's second issue, he contends that the court erred in denying his motion to suppress because Trooper James unlawfully continued the detention of Appellant after completing the mission of the traffic stop.[7] Specifically, Appellant claims that Trooper James did not have reasonable suspicion to prolong the mission of the stop. Appellant suggests that although Trooper James smelled marijuana coming from Appellant's vehicle, marijuana alone is not sufficient to establish probable cause for an arrest. Appellant concludes the court erred by denying his suppression motion on these grounds. We disagree.

The duration of police inquiries during a traffic stop is determined by the seizure's "mission" to address the traffic violation that warranted the stop, and to attend to related safety concerns. *See Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa.Super. 2023) (citing *Rodriguez v. United States*, 575 U.S. 348, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015)). When a stop "lasts longer than is necessary to complete its mission," it becomes unlawful. *Ross, supra* (internal citations omitted).

The critical question is not whether the inquiry occurs before or after the issuance of a ticket, but whether it prolongs or adds time to the stop, and whether there is reasonable suspicion to support the extension. *See id. See also Commonwealth v. Sloan*, 303 A.3d 155, 162-63 (Pa.Super. 2023)

_____

[7] To the extent Appellant again argues in this issue that Trooper James had no reasonable suspicion to conduct a traffic stop, we have already rejected this argument and determined that Trooper James appropriately stopped Appellant due to his failure to use a turn signal.

(holding that police had reasonable suspicion for DUI despite fact that initial stop was not based on driver's impaired driving, based on odor of burnt marijuana, observation that driver's eyes were red, bloodshot, teary, and glassy, and where driver showed confusion and slowed, slurred speech); *Commonwealth v. Dabney*, 274 A.3d 1283, 1285-86, 1292-93 (Pa.Super. 2022) (holding that odor of raw marijuana and observation of driver's dilated, red eyes were sufficient to supply reasonable suspicion of DUI to support detention for field sobriety tests despite fact that initial stop was not for impaired driving). Additionally, while the odor of marijuana alone "does not amount to probable cause to conduct a warrantless search of a vehicle" it "may be considered as a factor in examining the totality of the circumstances." *Commonwealth v. Barr*, ___ Pa. ___, ___, 266 A.3d 25, 44 (2021). *See also Commonwealth v. Livingstone*, 644 Pa. 27, 36 n.1, 174 A.3d 609, 614 n.1 (2017) (stating "an arrest or custodial detention must be supported by probable cause to believe the person is engaged in criminal activity").

Instantly, the trial court explained:

> Trooper [James] followed [Appellant's] vehicle into the Wawa, and [Appellant] had pulled up to the gas pump where he was presumably stopped to get gas in his vehicle. The trooper approached the vehicle. [Appellant] was unable to produce a valid operator's license. In fact, the trooper was able to confirm that the license had been suspended.
>
> Upon speaking with [Appellant] while in the vehicle, the trooper noticed an odor[.] [Appellant] had glassy eyes, was disheveled. In fact, had difficulty finding the insurance. Trooper … explained that [Appellant] told him the insurance was on his phone, but he couldn't find his phone, yet, the

- 9 -

phone was right next to him.

[T]hrough the initial inquiry, [Appellant] was asked to step out of the vehicle where the field sobriety tests were performed. It was the trooper's opinion that [Appellant] had trouble maintaining his balance … [O]n the Walk and Turn Test, he had difficulty maintaining balance. He did not use the correct number of steps. He stopped, had difficulty with the turn and used his arms for balance.

He was also given the Horizontal Gaze Nystagmus Test, and he was given a Convergence Test. Also given the one-leg stand, where trooper told us [Appellant] swayed and he performed that test approximately 14 seconds. He was asked to count and do it in about 30 seconds. He was asked to count to himself and he counted out loud. So based upon all of that [Appellant] was placed under arrest.

A … a traffic stop based on reasonable suspicion must serve some type of investigatory purpose while stopped based on an observed vehicle code violation or non-investigable offense must be supported by probable cause. In this case, the trooper observed the specific violations and they were violations of the vehicle code.

As I pointed out earlier, the trooper testified to the multiple violations of the turn signal … the non use of a turn signal or incorrect use of the turn signal. In any event, there's a distinction between the investigative potential of the vehicle stop based on reasonable suspicion compared to other suspected violations of the motor vehicle code, which I believe was taken into consideration by the trooper.

In other words, I believe he had probable cause to stop the vehicle based upon those violations in his presence. So I do believe that based upon his observations of the vehicle; that is, [Appellant's] glassy eyes, the odor of marijuana and his disheveled appearance and the inability to locate the insurance card coupled with the trooper's opinion of the failed field sobriety tests, I believe there was probable cause for the arrest.

I should point out, I find the trooper's testimony to be credible, I accept it in its entirety. So, therefore, the Motion

- 10 -

to Suppress, for reasons we discussed, is denied.
(N.T. Suppression Hearing at 55-59).

The record supports the court's summation of the evidence and its legal conclusions. Despite Appellant's arguments to the contrary, it was not solely the odor of marijuana that led Trooper James to ask Appellant to step out of the car. Rather, Trooper James observed Appellant's glassy and dilated eyes; disheveled appearance, including driving barefoot; inability to find his phone despite the phone sitting next to him; inability to produce a valid license and admission that it was suspended; **as well as** the odor of marijuana. The totality of these circumstances provided reasonable suspicion for Trooper James to extend the traffic stop to conduct field sobriety tests. *See Sloan, supra*; *Ross, supra*; *Dabney, supra*. The aforementioned facts, as well as Appellant's failure to pass field sobriety tests, provided probable cause for Appellant's arrest. *See Livingstone, supra*. Therefore, the court properly denied Appellant's suppression motion. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2025

- 11 -